RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0067P (6th Cir.)
File Name: 02a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

THOMAS D. MONZO,
            *Petitioner-Appellant,*

            *v.*

RON EDWARDS, Warden,
            *Respondent-Appellee.*

No. 00-3733

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00145—Edmund A. Sargus, Jr., District Judge.

Argued: January 29, 2002

Decided and Filed: February 22, 2002

Before: GUY and CLAY, Circuit Judges; NUGENT,[*]
District Judge.

———————————

**COUNSEL**

**ARGUED:** Richard F. Swope, SWOPE & SWOPE,
Reynoldsburg, Ohio, for Appellant. M. Scott Criss, OFFICE
OF THE ATTORNEY GENERAL, CORRECTIONS

———————————

[*] The Honorable Donald C. Nugent, United States District Judge for
the Northern District of Ohio, sitting by designation.

1

LITIGATION SECTION, Columbus, Ohio, for Appellee. **ON BRIEF:** Richard F. Swope, SWOPE & SWOPE, Reynoldsburg, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

———————

**OPINION**

———————

   RALPH B. GUY, JR., Circuit Judge. Petitioner, Thomas D. Monzo, appeals from the district court's denial of his petition for writ of *habeas corpus* filed under 28 U.S.C. § 2254, through which he challenged his 1994 state convictions for aggravated burglary, kidnapping, and two counts of rape. The petition asserted six claims of ineffective assistance of trial counsel and a seventh claim for ineffective assistance of appellate counsel. Monzo argues that the district court erred in finding (1) that four of the claims had been procedurally defaulted in state court, and (2) that the state court's rejection of the other three claims on the merits did not involve either an unreasonable application of federal law or an unreasonable determination of the facts. After review of the record and the arguments presented on appeal, we affirm.

**I.**

**A.  Background**

   In the early hours of October 24, 1987, Patricia Groseck was awakened by a male intruder lying on top of her in bed. Because the house was dark and the man later placed a pillowcase on her head, she could only describe him as being around six feet tall and 185 pounds with fine, silky, or thinning hair. She also said he spoke with a distinct southern or Appalachian accent. He performed cunnilingus on her and asked for her keys. When Groseck said they were in her purse in the kitchen, he called her a liar. The man then had sexual intercourse with her. Asking for her keys again, he took her

to the kitchen to find them. Groseck, who was still wearing the pillowcase, found the keys on top of a kitchen stool. The intruder demanded to know how to disengage the alarm system and which of her keys would open the back door. The man led her to the landing inside the basement door and told her to count to three hundred. Groseck waited and, after hearing the back door open and close, she called the police.

The police discovered that the intruder had entered through a window leading to the crawl space, which was the only window not connected to the alarm system. A knife from the kitchen was found on the floor next to Groseck's bed. Police also found Groseck's open wallet and purse in the bedroom. Groseck testified that she had left her purse, with her wallet inside it, on the kitchen counter. Groseck was examined at the hospital, and samples taken were found to contain sperm. That was consistent with Groseck's statement that she believed the man had ejaculated. However, the vaginal swabs and slides, along with the bed sheets and pillow cases taken from the house, were mistakenly destroyed by the police in 1990.

Two fingerprints lifted from the house were kept for comparison, one from the outside of the wallet and one from the doorjamb around the door to the basement. However, it was not until June 1993, after the Automated Fingerprint Identification System (AFIS) became available, that Monzo was first identified as a suspect. The AFIS search included him as one of six possible matches. Subsequent fingerprint analysis determined that the print lifted from Groseck's wallet matched Monzo's right thumbprint and that the print taken from the trim around the basement door matched Monzo's right middle and ring fingers.

Monzo claimed his fingerprints could be explained because he had worked for Jack Travis, a contractor who had renovated part of Groseck's house. Monzo testified that he had been in the house at least ten times, including three or four times during 1987, to perform remodeling work and odd jobs for Travis. He said he was paid in cash for the odd jobs

and may have touched Groseck's wallet when handing it to her so that she could pay him. The fingerprint expert testified, however, that the fingerprint from the wallet was relatively fresh because prints cannot be lifted from a porous surface after about fifteen days. Also, no overlapping prints were found on the print lifted from Groseck's wallet.

Groseck testified that Travis did not send any workers to her house after the spring of 1986. Travis contracted to do major remodeling to Groseck's kitchen, including moving the basement stairs, which took place from approximately the end of July to mid-September 1985. In the spring of 1986, Groseck called Travis back to have him repair the back door of the house because it had been installed incorrectly. In rebuttal, Travis testified that Monzo worked for him for about two and one-half weeks in September 1985. Travis also testified that except for the remodeling job in 1985, he only sent a worker to Groseck's house on one other occasion to fix the back door.

In April 1987, Groseck hired a second contractor to do further remodeling work that included installing a new six-panel door in the doorway leading to the basement. Groseck then hired a painter who painted the brick and plaster walls, the molding, the newly installed door, and the trim on the door leading to the basement. Groseck paid him for his work in June 1987. The painter also testified that he painted the middle room of the house including the wood trim around the new basement door shortly before June 15, 1987. The fingerprint expert testified that the print left on the doorjamb could not have predated the last time the trim was painted.

Monzo also asserted as an alibi defense that he went to see his parents in Alpharetta, Georgia, between October 19 and November 12, 1987. Brenda Monzo, petitioner's wife at the time of trial, testified that she and Monzo were living together in October 1987. They had a disagreement and he left Columbus, Ohio, on October 19 to go visit his parents in Georgia and did not return until November 11, 1987. Brenda's best friend, Rheta Marcum, testified that Brenda

request discovery, prevent his client from writing the letter to the judge, and by providing employment records to the prosecution. After review of the record, we agree with the district court and conclude that petitioner has not shown that the state court's rejection of these ineffective assistance of counsel claims involved an unreasonable application of *Strickland*.

**AFFIRMED.**

by defendant. Defendant has not established that a "stonewall" attitude on the part of defense counsel prior to indictment would have precluded indictment itself, since the prosecution had made its fingerprint match, or that prosecution interviews of defendant's other alibi witnesses, including his mother who contacted Harned, would not have led to presentation of the damaging evidence. Finally, defense counsel was not responsible for the eventual impeachment of defendant's employment testimony and his mother's testimony by a witness whom it had been led to believe by defendant would be favorable.

The district court reviewed the record, articulated the proper standards to be applied, and concluded that the state court's adjudication of these claims did not involve an unreasonable application of *Strickland*. The district court also noted that

> although petitioner argues that trial counsel should have located credit card receipts [or] other documents demonstrating his whereabouts on October 24, 1987, no such documents were offered in support of his state post-conviction petition. Similarly, petitioner has failed to identify any specific discovery his counsel would have obtained from the prosecutor had he made a discovery demand. Petitioner himself chose to write the letter to the trial judge explaining his fingerprints at the crime scene by work he did at the victim's house during 1986. . . . Finally, his trial counsel's decision to give employment records to the prosecutor was a tactical one which was consistent with Monzo's assertion that he was in Georgia at the time of the offense. The fact that the prosecutor was able to use that information to petitioner's detriment does not render the original decision to share the information ineffective assistance of counsel.

On appeal, petitioner simply reiterates his claims that he was denied effective assistance of trial counsel by failing to interview alibi witnesses, obtain credit card and tax records,

told her on October 19 that Monzo had left Columbus. Marcum also testified that petitioner called her on or about October 21, and that she knew he was calling from Georgia because she talked to his mother during the call. Petitioner's mother, Patricia Monzo, testified that he was with her in Alpharetta, Georgia, on October 24, 1987. Another witness, Merton Anderson, testified that he met Monzo in Alpharetta, Georgia, on the morning of October 24, 1987, and that he remembered the date because he invited Monzo to a Halloween party the following weekend.

### B.  Procedural History

A criminal complaint charging one count of rape was filed against Monzo on July 3, 1993, less than four months before the statute of limitations would have run. On July 27, 1993, Monzo waived preliminary hearing and was bound over to the Common Pleas Court of Franklin County, Ohio. Monzo was indicted on charges of aggravated burglary, kidnapping, and two counts of rape on December 16, 1993, and was convicted by a jury of all charges on May 17, 1994.[1]

With the assistance of new counsel, Monzo appealed his convictions on the grounds of prosecutorial misconduct, insufficiency of the evidence, improper exclusion of evidence, and error in the revocation of his bond. No claims of ineffective assistance of counsel were asserted. The Court of Appeals found no error and affirmed his convictions on March 14, 1995. The Ohio Supreme Court denied leave to appeal on July 19, 1995.

In September 1996, having obtained a third attorney, Monzo filed a petition for post-conviction relief under Ohio Rev. Code Ann. section 2954.21, raising several claims of

---

[1] The state court sentenced Monzo to 7 to 25 years' imprisonment for aggravated burglary, 5 to 15 years for kidnapping, and 8 to 25 years on each count of rape. The sentences on counts 2, 3, and 4 were to be served concurrently with each other and consecutively to count 1, for a combined maximum term of 50 years' imprisonment.

ineffective assistance of trial counsel. On March 11, 1997, after an evidentiary hearing, the trial court denied the petition on the grounds of *res judicata* and lack of merit. The Ohio Court of Appeals affirmed the denial of post-conviction relief on February 17, 1998, finding that only some of the claims were barred by *res judicata*. The other claims of ineffective assistance of counsel were denied on the merits. The Ohio Supreme Court declined to review that decision.

On May 8, 1998, Monzo filed a motion to reopen or reconsider his appeal pursuant to Ohio App. R. 26(B). The motion, based on a claim of ineffective assistance of appellate counsel, also reasserted the ineffective assistance of counsel claims raised in the post-conviction proceeding. The Court of Appeals denied the motion, finding both that the motion was untimely and that the claims had been previously addressed. Monzo appealed, but the Ohio Supreme Court declined jurisdiction.

The petition for writ of *habeas corpus*, filed on February 10, 1999, asserted six claims of ineffective assistance of trial counsel and a seventh claim of ineffective assistance of appellate counsel. On May 4, 2000, the district court denied the petition finding that claims 2, 5, 6, and 7 were procedurally defaulted in state court and that petitioner's claim of ineffective assistance of appellate counsel would not establish cause for the default. With respect to claims 1, 3, and 4, which were adjudicated on the merits in state court, the district court concluded that the Ohio Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, and was not an unreasonable determination of the facts in light of the evidence presented in state court. Monzo appealed, and the district court granted his request for a certificate of appealability.

## II.

This petition, filed on February 10, 1999, is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320, 336

any evidence that defendant's signature appeared on one of the credit slips dated on or about the day of the crime, the exculpatory value of the credit card slips is dubious and insufficient to support a finding of ineffective assistance of trial counsel in failing to procure them for the original trial.

. . . .

Defendant argues further that trial counsel was ineffective for excessively cooperating with the prosecution prior to indictment, which led to the prosecution calling Brenda Harned, administrative manager for PMS Consolidated where defendant briefly worked around the time of the crime, as a rebuttal witness. Harned's testimony . . . was damaging to defendant, because it cast some doubt on defendant's actual arrival date in Georgia prior to the employment interview on November 2, 1987, some eight days after the October 24, 1987 rape. As the Supreme Court pointed out in *Strickland*, we must avoid the "distorting affects of hindsight" and evaluate the tactical decisions made by counsel from counsel's perspective at the time. During the period in question, trial counsel was attempting to avoid indictment and proceeding under the assumption that information provided by defendant, including those facts reasonably relayed to the prosecution in an attempt to avoid indictment, would support defendant's alibi. Similarly, trial counsel cannot be judged ineffective in hindsight for any alleged failure to review the letter sent by defendant to the judge [that explained he had worked in Groseck's house in 1986], which later was used to impeach defendant's testimony at trial regarding his dates of employment by Jack Travis. Defendant has not asserted that trial counsel advised him to include the damaging assertion found in this letter, or withhold facts which would better have supported defendant's explanation for the presence of his fingerprints in the house. Defense counsel was again relying on the accuracy of the facts as presented to him

However, at the post-conviction hearing, the trial counsel testified that he received substantial information and cooperation from the prosecutor before the indictment and thought further discovery was unnecessary under these circumstances. Furthermore, the attorney explained in the original trial transcript that he had not sought discovery because, under Ohio's reciprocal rule of discovery, he would have been obligated to provide information to the prosecution. Moreover, defendant does not set forth, apart from the issue of inadvertently destroyed evidence which was revealed at trial, precisely what additional information from the prosecution could have furthered his defense at trial. Again, the second prong of the *Strickland* test is not met.

Defendant further asserts that trial counsel was ineffective because he failed to gather evidence regarding purportedly exculpatory credit card slips and tax forms. The credit card slips would have demonstrated that defendant was in Georgia at the time of the crime and had gone shopping with his mother, and the 1986 and 1987 W-2 forms from Travis Construction Company would have demonstrated that defendant was employed by Jack Travis and thus bolstered his story that he had returned to the victim's home several times after the initial remodeling job in 1985. Initially, we note that defense did not introduce any W-2 forms at the post-conviction hearing, although the forms concededly remain available from the IRS. In the absence of the W-2 forms to demonstrate their value to the defense, any assertion in a post-conviction proceeding that the forms would have furthered the defense is a mere reiteration of defendant's original proposition that he worked for Jack Travis beyond 1985, into the 1986 and 1987 periods which he claimed at trial.

With respect to the credit card slips, defendant's mother admitted at the post-conviction hearing that she could not remember if defendant signed any of the credit card slips which remained unavailable. In the absence of

---

(1997). The state court's findings of fact are presumed to be correct and may only be contravened by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We review the district court's conclusions concerning a *habeas* petition *de novo* and its factual findings for clear error. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

## A.   Procedural Default

Petitioner challenges the district court's finding that he procedurally defaulted claims 2, 5, 6, and 7 and failed to demonstrate cause and prejudice to excuse the default. In his second, fifth, and sixth *habeas* claims, petitioner argued that he was denied effective assistance of counsel when his trial attorney failed to move to dismiss the charges on the grounds of pretrial delay or the statute of limitations (claim 5); failed to move to suppress evidence or to dismiss the case based on the destruction of the "rape kit" evidence by the police (claim 2); and failed to move to suppress the testimony of Sylvia Acton, a criminalist, concerning the presence of semen in samples taken from the victim (claim 6). In his seventh claim, petitioner argued that he was denied effective assistance of counsel when his appellate counsel failed to raise his claims of ineffective assistance of trial counsel on direct appeal (claim 7).

When "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Murray v. Carrier*, 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).[2]   In determining whether a claim has been

---

[2]Petitioner does not argue that our refusal to evaluate the procedurally defaulted claims would result in a manifest miscarriage of justice. *Murray*, 477 U.S. at 496 (federal *habeas* court may grant the writ

procedurally defaulted, this court has applied the following four-part test: (1) the court must determine that there is a state procedural rule with which the petitioner failed to comply; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) the state procedural rule must have been an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). *See also Scott v. Mitchell*, 209 F.3d 854, 863-64 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000).

**1.    Default**

First, in considering whether the state courts enforced a state procedural rule to bar review of petitioner's federal claims, the district court looked no further than the untimely filing of the motion to reopen the appeal under Rule 26(B). Respondent maintains, however, that *res judicata* was the state procedural rule that actually barred the state court from considering his ineffective assistance of trial counsel claims on the merits. When the last reasoned decision rejecting a federal claim "explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). *See also Rust v. Zent*, 17 F.3d 155, 161 (6th Cir.1994).[3]

_____

in the absence of a showing of cause and prejudice when "a constitutional violation has probably resulted in the conviction of one who is actually innocent.") *See also Schlup v. Delo*, 513 U.S. 298, 314-17 (1995).

[3] This presumption applies even when the later state decision rests on a prohibition against further state review, such as a rule preventing relitigation of state *habeas* claims previously raised on direct appeal. *Ylst*,

defendant's trial, the defense presented several alibi witnesses, none of whom swayed the jury in the face of the persuasive fingerprint evidence presented by the prosecution. Even if the trial court were to have accepted the conclusory testimony of defendant's mother at the post-conviction hearing, regarding what the now-absent witnesses would have said had they been called by the defense at trial, we cannot find from the record before us that the jury would have been any more likely to reject the fingerprint evidence than it was in the absence of these alibi witnesses.

At trial, the prosecution was able to rebut every effort by the defense to explain the presence of defendant's thumbprint on the wallet and fingerprints on the basement door trim. Groseck testified that the wallet was her everyday wallet, which the prosecution properly pointed out would indicate that any print more than a few days old would have probably been obliterated or overlapped by her frequent handling of the wallet. Most telling, Groseck categorically denied having any workmen from Jack Travis' Construction Company to make repairs after the spring of 1986, or paying any of Travis' employees out of her wallet for odd jobs after that date. The testimony of Travis confirmed Groseck's denial.

In addition, the state established that the door frame where defendant's fingerprints were found had been painted in June 1987, which excluded any possibility that defendant had left the fingerprints at any time prior to that even if he had returned to do work at the Groseck residence, which Groseck and Travis denied.

In this context, it is unlikely that the presentation of further alibi evidence would have impacted the jury's decision, and the second prong of the *Strickland* test is not met.

Defendant also asserts that trial counsel was ineffective in failing to request discovery from the prosecution.

28 U.S.C. § 2254(d)(1)-(2). Monzo argues, it seems, that the state court's decision adjudicating claims 1, 3, and 4 involved an unreasonable application of clearly established Supreme Court precedent; namely, the standards set forth in *Strickland*. There is no question that *Strickland* qualifies as clearly established federal law under § 2254(d)(1). *Williams v. Taylor*, 529 U.S. 362, 391 (2000).

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. Without defining "objectively unreasonable," the Court explained that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

As the district court observed, the Ohio Court of Appeals rejected these claims on the merits in affirming the denial of Monzo's motion for post-conviction relief. The relevant portions of the state court decision are as follows:

Defendant alleges that trial counsel was ineffective for failure to adequately investigate and contact potential alibi witnesses. In order to establish ineffective assistance of trial counsel under the *Strickland* standard, a general allegation of failure to investigate on the part of the trial counsel is insufficient. Defendant must show that the lack of investigation "actually had an adverse effect on the defense." *Strickland*, *supra*, at 693. The burden was upon defendant at the post-conviction hearing to establish that there was sufficient favorable evidence that his counsel failed to discover through a reasonable investigation, and that there is a reasonable probability that presentation of such favorable evidence would have altered the outcome of the proceedings. At

In this case, the Ohio Court of Appeals' decision affirming the denial of post-conviction relief explicitly relied on *res judicata* in refusing to consider the ineffective assistance of counsel claims that could have been raised on direct appeal. Further, nothing in the Court of Appeals' subsequent decision denying the motion to reopen the appeal indicates that it disregarded the procedural bar or considered the defaulted claims on the merits. On the contrary, the court's later decision clearly relied on its earlier disposition of the ineffective assistance of trial counsel claims. *Compare Manning v. Huffman*, 269 F.3d 720, 724 (6th Cir. 2001) (no procedural default because later decision addressed claim on the merits). We conclude, therefore, that the state courts applied *res judicata* to bar consideration of claims 2, 5, and 6 on the merits.

In Ohio, *res judicata* has long been held to bar consideration of constitutional claims in post-conviction proceedings brought under Ohio Rev. Code Ann. section 2953.21 when those claims have already been or could have been fully litigated either before judgment or on direct appeal from that judgment. *State v. Perry*, 226 N.E.2d 104, 105-06 (Ohio 1967). It is also settled that *res judicata* applies when a defendant who is represented by new counsel on direct appeal fails to raise the issue of ineffective assistance of trial counsel, and the issue could fairly have been determined without resort to evidence outside the record. *State v. Cole*, 443 N.E.2d 169, 170 (Ohio 1982). We find that *res judicata* was an adequate and independent state procedural ground upon which the state court actually relied to bar consideration of the ineffective assistance of counsel claims asserted in *habeas* claims 2, 5, and 6. *See, e.g.*, *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

---

501 U.S. at 804 n.3.

Seeking to excuse this default, petitioner argues that he was denied effective assistance of appellate counsel by the failure to raise the defaulted claims on direct appeal. Attorney error does not constitute "cause" unless it rises to the level of a constitutional violation of the right to counsel under *Strickland*. *Murray*, 477 U.S. at 488. The district court evaluated this claim on the merits and concluded that petitioner had not demonstrated that he was denied effective assistance of counsel under *Strickland*. We may not turn directly to the merits of the claim, however, because the Supreme Court has recently made clear that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Petitioner's ineffective assistance of appellate counsel claim was raised in his motion to reopen the appeal, and the state court clearly applied the time limitation in Rule 26(B) to bar consideration of this claim on the merits. The Ohio Court of Appeals explained that

> appellant's current counsel also represented appellant . . . in 1996-1997, in the post[-]conviction relief proceeding, raising the same issues that are presented in appellant's instant petition. In light of the fact that, by and through present counsel, appellant could have sought to reopen his 1994 appeal upon grounds of ineffective assistance of counsel at the point in time during which he sought post[-]conviction relief upon those same issues, this court finds that appellant's motion is not timely filed.

By the time that Monzo's post-conviction motion was filed in September 1996, it was well established that claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals. *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992). Rule 26(B), which was amended July 1, 1993, provides that "[a]n application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from

he applied for work after the offenses had been committed (claim 4).[6]

With respect to claims that were adjudicated on the merits in state court, *habeas corpus* relief is unavailable unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6]Although petitioner does not contest the inclusion of the issue regarding the fingerprint analysis with those claims which were adjudicated on the merits, it is clear from the Ohio Court of Appeals' decision denying post-conviction relief that this claim was found to be barred by *res judicata* because it was not raised on direct appeal. This claim was therefore procedurally defaulted along with claims 2, 5, and 6.

We assume that petitioner would again rely on his claim of ineffective assistance of appellate counsel as cause to excuse that default, but that claim was defaulted as well. Moreover, the record indicates that the Columbus Police Department's fingerprint examiner matched the prints to Monzo and trial counsel insisted that the analysis be reviewed by the FBI. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Also, a fair assessment of counsel's performance requires that every effort be made to avoid the distorting effects of hindsight. *Id.* Monzo has not demonstrated that, having insisted that the identification be confirmed, trial counsel's choice that it be performed by the FBI fell below an objective standard of reasonableness. More importantly, petitioner has not shown that the failure to have someone else evaluate the fingerprint evidence resulted in actual prejudice. While the fingerprint evidence was critical to the state's case, it would be sheer speculation to conclude that a different evaluation would have resulted in favorable evidence. Petitioner has not shown that there is a reasonable probability that, but for the alleged errors, the result of the proceeding would have been different. As such, Monzo has not shown that the failure to raise the issue on direct appeal constituted ineffective assistance of appellate counsel.

court applies the two-part test set forth in *United States v. Lovasco*, 431 U.S. 783 (1977). *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992). A defendant must demonstrate that (1) he suffered substantial prejudice to his right to a fair trial as a result of the delay; and (2) the government purposely delayed in order to gain a tactical advantage over the defendant. *See Brown*, 959 F.2d at 66.

In the present case, even if the Court assumes *arguendo* that petition[er] was prejudiced by the delay, petitioner cannot demonstrate that the prosecution purposely delayed in order to gain a tactical advantage over the defendant. Petitioner was not identified as the perpetrator until 1993. No evidence has been presented that would indicate that petitioner could have been identified sooner. Petitioner's appellate counsel was not ineffective for failing to raise on direct appeal assignments of error relating to trial counsel's failure to seek dismissal of the indictment based on the statute of limitations and pre-trial delay.

Petitioner does not challenge the district court's reasoning or otherwise demonstrate error in the evaluation of this claim on the merits.

## B.    Claims 1, 3, and 4

In claims 1, 3, and 4, Monzo argued that he was denied effective assistance of counsel because his trial attorney: (1) failed to interview witnesses or secure records to support his alibi defense, failed to demand discovery from the government, and did not obtain independent evaluation of the fingerprints but insisted that the FBI review the state's fingerprint analysis (claim 1); (2) permitted Monzo to write a letter to the judge during the preindictment period that was used to discredit his claim to have worked in Groseck's house during 1987 (claim 3); and (3) provided the state with employment and personnel records from Georgia that showed

journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

Petitioner asserts that the "good cause" requirement in Rule 26(B) is not an adequate state procedural ground because there is no uniformity in its application. A state procedural rule is adequate if it was "firmly established" and "regularly followed" by the time it was applied in this case. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988). Petitioner relies heavily on *dicta* from this court's decision in *White v. Schotten*, 201 F.3d 743, 751 (6th Cir.), *cert. denied*, 531 U.S. 940 (2000). Referencing a number of Ohio state court decisions from 1993 and 1994, the court in *White* stated that:

> A review of the Ohio court of appeals cases attached to Petitioner's brief reveals that the state courts have not achieved consensus on what constitutes "good cause" to excuse non-compliance with Rule 26(B). Nonetheless, we recognize that the rule is relatively new and acknowledge that it may take some time for the Ohio courts to achieve consensus.

*Id.* at 751 (citations omitted). Conceding that the "good cause" requirement is consistently applied, Monzo argues that there was no firmly established or regularly followed standard for doing so at the time his motion to reopen was denied in June 1998. However, he has not called this court's attention to any Ohio decisions demonstrating that the standard was not uniformly applied to cases like his when his motion was denied.

Our review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause at the time the rule was applied in this case. We do not dwell on the decisions issued shortly after the *Murnahan* decision, as the Ohio courts have had several years since then to consider the "good cause" requirement. *See Ballew v. Mitchell*, No. C-1-98-867, 2001 WL 242563, at *7 (S.D. Ohio Mar. 7, 2001) (not particularly instructive to rely heavily on decisions issued shortly after *Murnahan*). The Ohio Supreme

Court shed light on the appropriate focus for determining good cause under Rule 26(B) in *State v. Reddick*, 647 N.E.2d 784, 786 (Ohio 1995). *See State v. Sweeney*, 723 N.E.2d 655, 656-57 (Ohio Ct. App. 1999). That is, the Court in *Reddick* stressed that:

> Neither *Murnahan* nor App. R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals. Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.

647 N.E.2d at 786. Further, "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." *State v. Williams*, 659 N.E.2d 1253, 1254 (Ohio 1996). *See also State v. Franklin*, 650 N.E.2d 447, 448 (Ohio 1995) (ignorance of the law does not justify untimely filing of a motion to reopen); *State v. Kaszas*, No. 72546/72547, 2000 WL 1195676, at *1 (Ohio Ct. App. Aug. 14, 2000) (listing decisions defining what constitutes good cause). Thus, we find the state courts relied on an adequate and independent state procedural ground to foreclose review of petitioner's *Murnahan* claim.[4]

---

[4] In his reply brief, petitioner seems to assert a different claim of ineffective assistance of counsel to establish cause for the procedural default of the *Murnahan* claim. He argues that his attorney on direct appeal rendered ineffective assistance of counsel by failing to file a motion to reopen within the 90-day period provided by Rule 26(B). This contention ignores the fact that the procedural bar was applied by the state court only after concluding that the Rule 26(B) motion could have been brought at the time the post-conviction motion was filed by petitioner's third counsel. Nonetheless, because Monzo's *habeas* petition did not assert the untimeliness of the Rule 26(B) motion as the basis for a claim of ineffective assistance of counsel, such a claim is not properly before

> When an accused has been bound over to a grand jury and no final action is taken by the grand jury within sixty days after the date of bindover, the court or the administrative judge of the court shall dismiss the charge unless for good cause shown the prosecuting attorney is granted a continuance for a definite period of time.

Petitioner does not dispute that the court granted the prosecution extensions in accordance with this rule, or claim that there was not good cause. Rather, petitioner argues that appellate counsel was ineffective for not raising trial counsel's failure to object to the 130 days that elapsed between bindover and indictment. There is no showing, however, that the failure to raise the issue resulted in prejudice to the defendant.

Petitioner's final claim rests on the contention that trial counsel should have moved to dismiss the charges on the grounds that the preindictment delay violated due process under *State v. Luck*, 472 N.E.2d 1097 (Ohio 1984). Adopting the test set forth in *United States v. Marion*, 404 U.S. 307 (1971), and *United States v. Lovasco*, 431 U.S. 783 (1977), the Ohio Supreme Court held that "unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process." 472 N.E.2d at 1099 (syllabus). Delay in commencing prosecution is unjustifiable when the state uses delay to gain a tactical advantage over the defendant, or through negligence or error ceases to investigate, and later, without new evidence, decides to prosecute. *Luck*, 472 N.E.2d at 1105.

The district court rejected this claim on the merits, reasoning as follows:

> While the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations, the Fifth Amendment also imposes due process restraints on the length of a pre-indictment delay. *See United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986). In assessing claims of pre-indictment delay, this

Petitioner claims that his counsel should have argued that the prosecution was not commenced within the limitations period set forth in Ohio Rev. Code Ann. section 2901.13. However, section 2901.13(E) provides that:

A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. . . . A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same.

The criminal complaint was filed on July 3, 1993, and an arrest warrant issued the same day. Petitioner appeared and waived his right to preliminary hearing on July 26, 1993. Thus, as the district court concluded, the criminal prosecution was commenced on July 3, 1993. Given that petitioner has offered no authority to suggest that Ohio might conclude that the prosecution was *not* commenced at that time, we cannot find that counsel's failure to raise the issue on appeal was ineffective.[5]

With respect to preindictment delay, trial counsel did not object to the extensions granted to the government enlarging the time between bindover and indictment and did not argue that the delay in prosecution violated due process. Petitioner continues to rely on  Rule 39(B)(2) of the Rules of Superintendence for the Courts of Ohio, which provides that:

---

[5] Petitioner does not contest the district court's further finding that the limitations period ceased running when the prosecution was commenced and, therefore, the charges added through indictment were not brought in violation of the statute of limitations. *See* OHIO REV. CODE ANN. § 2901.13(H) ("The period of limitation shall not run during any time a prosecution against the accused based on the same conduct is pending in this state, even though the indictment, information, or process which commenced the prosecution is quashed or the proceedings thereon are set aside or reversed on appeal.")

---

Even if it was not an adequate state procedural ground, however, we agree with the district court that Monzo was not denied effective assistance of appellate counsel and, therefore, cannot demonstrate cause to excuse the procedural default of the ineffective assistance of trial counsel claims.

## 2.    Ineffective Assistance of Appellate Counsel as "Cause"

To establish ineffective assistance of counsel under *Strickland*, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant. *Strickland*, 466 U.S. at 687-88. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

There is a right to effective assistance of counsel in connection with a defendant's first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). It is not necessary for appellate counsel to raise every nonfrivolous claim on direct appeal. *Jones v. Barnes*, 463 U.S. 745 (1983); *Coleman*, 268 F.3d at 430-31. In fact, the process of "'winnowing out weaker arguments on appeal'" is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

---

us.

Petitioner maintains that his appellate counsel was constitutionally ineffective for failing to argue that trial counsel rendered ineffective assistance of counsel by failing to (1) seek suppression of evidence or dismissal of the charges as a result of the destruction of the "rape kit" evidence; or (2) seek dismissal of the charges as a violation of the statute of limitations or on the grounds of unjustified pretrial delay. We agree with the district court that petitioner has failed to show that he was denied effective assistance of counsel on appeal.

### a.   Destruction of Evidence

The "rape kit" evidence was destroyed by the police in 1990. At that time, the police had not identified any suspects and DNA testing had not been performed. Also, the police department did not have a written policy regarding the destruction of evidence. The trial court found that "the evidence initially gathered by the police department was inadvertently and by mistake ordered to be destroyed by Detective Carder of the Columbus Police Department." Although petitioner's trial counsel learned that the evidence had been destroyed, he did not move to dismiss the charges or suppress evidence that semen was found in the samples. During post-conviction proceedings, trial counsel conceded that he was unaware of *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984). The district court evaluated this claim on the merits and correctly concluded that petitioner was unable to demonstrate a due process violation under *Youngblood*. As such, the failure to raise the issue on appeal was not constitutionally ineffective.

As we recently explained in *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001), separate tests apply to determine whether the state's failure to preserve evidence rises to the level of a due process violation in cases in which material exculpatory evidence is not accessible, *Trombetta*, 467 U.S. at 489, as opposed to cases in which "potentially useful" evidence is not accessible, *Youngblood*, 488 U.S. at

58. When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Youngblood*, 488 U.S. at 57; *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).

"The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 57 n.*. It is not enough that the police knew that semen samples could be determinative of guilt or innocence if preserved or tested. Although the investigation apparently remained open, the police had not identified Monzo or anyone else as a suspect in the crimes at the time the evidence was mistakenly destroyed. When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established. *Wright*, 260 F.3d at 571; *Jobson*, 102 F.3d at 218.

### b.   Statute of Limitations and Pretrial Delay

A complaint charging Monzo with one count of rape was filed on July 3, 1993, less than four months before the six-year statute of limitations would have run, and he was bound over to municipal court on July 27, 1993. On December 16, 1993, the indictment was filed expanding the charges to burglary, kidnapping, and two counts of rape. Petitioner claims that trial counsel was ineffective for not seeking to dismiss the charges either as a violation of the statute of limitations or as a violation of due process resulting from pretrial delay. In turn, he claims that appellate counsel was ineffective for not raising this claim on direct appeal.