NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0389n.06

No. 08-4538

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RONNIE D. WILSON,

      Petitioner-Appellant,

v.

PAT HURLEY,

      Respondent-Appellee.

_____/

FILED
Jun 28, 2010
LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

Before:  CLAY and GILMAN, Circuit Judges; and ZATKOFF, District Judge.[*]

**CLAY, Circuit Judge.**  Petitioner Ronnie Wilson appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, we **AFFIRM** the district court's order and **DENY** the petition for habeas corpus relief.

BACKGROUND

The Court of Appeals of Ohio stated the underlying facts of the crime as follows:

Wilson's convictions stem from accusations by his daughter, CW, involving improper sexual conduct.  In November 2004, while they were driving together to Lima, Ohio, CW first reported to her mother, Barbara Wilson, that her father had touched her in a sexual manner, and that he had "done [things] a father should not do to a child."  Barbara immediately turned the car around and returned home to confront Wilson; she sent CW and her siblings to an aunt's house.

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Barbara confronted Wilson, alone, about CW's accusations at their home in Cloverdale, Ohio. Wilson initially denied all of his daughter's allegations. However, after Barbara summoned CW to return home to confront her father Wilson eventually confessed, admitting that what CW said was true. He stated that he "did not know why" he had done these things.

The family did not report this incident, apparently at CW's request, and began attending counseling sessions in the hopes of keeping the family together. However, Barbara and Wilson eventually separated, after the extent of Wilson's actions became clear several months later.

CW initially disclosed to her mother in November 2004 that her father had touched her inappropriately. In May 2005, however, CW reported the full extent of Wilson's activity to her mother; that Wilson's inappropriate touching had begun in 2000 when she was eleven years old, that it progressed to him having her perform oral sex on him about once a week, that it evolved into him performing oral sex on her, and eventually to anal sex. This activity continued for over four years, and only stopped after CW told her father that it could not continue.

After CW disclosed the full extent of Wilson's actions to her mother, Barbara contacted the police.

*State v. Wilson*, No. 12-05-20, 2006 WL 1062103, at *1 (Ohio Ct. App. Apr. 24, 2006).

Petitioner was indicted on June 3, 2005 by the Putnam County Grand Jury of nine counts of rape in violation of Ohio Revised Code ("ORC") § 2907.02(A)(1)(b) and eleven counts of sexual battery in violation of ORC § 2907.03(A)(5). On August 29, 2005, a jury convicted Petitioner on all counts in the indictment. On September 20, 2005, the trial court sentenced Petitioner to thirty years in prison. Specifically, the court sentenced Petitioner to ten years' imprisonment on each of the rape counts and five years' imprisonment on each of the sexual battery counts. Three sets of rape counts were to be served consecutively, and the sexual battery counts were to be served concurrently, resulting in a total of 30 years.

On October 26, 2005, through new counsel, Petitioner filed a notice of appeal, raising two assignments of error: (1) the trial court committed an error of law in determining competency

2

pursuant to ORC § 2945.42, and (2) Petitioner was denied the effective assistance of counsel. On April 24, 2006, the Ohio Court of Appeals for the Third Appellate District affirmed Petitioner's convictions. On June 8, 2006, Petitioner filed a notice of appeal, raising as his only claim the argument that ORC § 2945.42 does not create an exception for the admission of privileged spousal communications, made in furtherance of preserving the marriage and the family, in a prosecution for rape and sexual battery against the parties' child. On October 4, 2006, the Ohio Supreme Court denied Petitioner leave to appeal.

On June 16, 2007, through new counsel, Petitioner filed an application to reopen his direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B). In this application, Petitioner raised the following assignments of error:

1. Ronnie Wilson was denied his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the first nine counts of the indictment were defective because it did not include an element or specification required by the statute and b) trial counsel was ineffective in failing to file a pre-trial motion to dismiss.

2. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the trial court's instruction to the jury regarding the first nine counts failed to require the jury to consider and make an independent finding of a material element and fact regarding the age of the complainant and b) trial counsel was ineffective in failing to object to this instruction, when the age of the complainant was a major issue at trial.

3. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the verdict forms in the first nine counts, reflecting the findings of the jury, do not state the separate and independent determination of age of the complainant that is statutorily required, when this is a major issue at trial and b) trial counsel was ineffective in failing to object to the defective verdict forms.

4. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution when a) the sentencing judge enhances his sentence, contra the *Blakely v. Washington* rule, using un-indicted

3

conduct as a basis to improperly render an excessive sentence and b) trial counsel was ineffective in failing to object at the sentencing hearing.

5. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) a series of photographs are introduced by the prosecution with typed commentary stating opinions on the alleged conduct; that, in certain situations, the investigation was ongoing, all of which was hearsay, created a profile and gave the jury the impression that guilt was preordained and b) trial counsel was ineffective under the *Strickland* doctrine in failing to move to redact the commentaries.

6. Ronnie Wilson was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) his wife, acting as a Government agent, and not as a private person, secretly records a tape with Ronnie Wilson, and this tape is introduced in the case-in-chief, and significantly relied upon by the prosecution and b) defense counsel was ineffective under the *Strickland* doctrine in failing to object under the proper issue.

7. Ronnie Wilson was denied his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when a) the evidence at trial shows the indictment was constructively amended and b) trial counsel was ineffective under the *Strickland* doctrine in failing to object.

(Hab. Pet. at 3-5). On August 2, 2007, the Ohio Court of Appeals for the Third Appellate District denied his application as untimely. On August 20, 2007, Petition filed a notice of appeal, raising the same seven assignments of error plus one additional ground of error:

When the appellate attorney (1) fails to notify the client of the ninety day rule in the re-opening of an appeal and (2) there is a threshold showing of constitutional errors [previously] not presented, the court of appeals errs in denying the application, contra the Fifth, Sixth and Fourteenth Amendments to the Constitution.

(Hab. Pet. at 21). On October 31, 2007, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.

On September 28, 2007, Petitioner filed a habeas petition, raising eleven grounds for relief. These include the seven grounds of relief he raised in his Rule 26(B) application (grounds one through seven), the ground he raised on appeal from the denial of his Rule 26(B) application (ground

4

nine), the claims of error he raised on direct appeal concerning the ineffective assistance of trial counsel (ground eleven) and the spousal communications privilege (ground ten), and the following additional claim: "Petitioner Wilson was denied effective assistance of appellate counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution" (ground eight). (Dist. Ct. R.E. 16 at 5-6). On September 18, 2008, the magistrate judge recommended denying the habeas petition. On October 6, 2008, the district court denied the petition but issued a certificate of appealability as to two issues: (1) whether Petitioner's first nine claims and eleventh claim for relief are procedurally defaulted, and (2) whether cause and prejudice has been shown with respect to the procedural default. On October 27, 2008, Petitioner timely filed a notice of appeal to this Court.

## DISCUSSION

### I.  Standard of Review

We review a district court's dismissal of a petition brought pursuant to 28 U.S.C. § 2254 *de novo*, but the district court's underlying factual findings for clear error. *Thompson v. Bell*, 580 F.3d 423, 433 (6th Cir. 2009) (citing *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005)).

Because Petitioner filed his habeas petition in 2007, the petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. See *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009). Under the AEDPA, Petitioner may obtain relief only if he can demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

5

## II. Procedural Default

### A. Standard

A federal court may not consider a claim for habeas corpus relief if the claim was procedurally defaulted in state court, unless the petitioner shows: (1) "cause" for his failure to comply with the state's procedural rules and "prejudice" resulting from the alleged violation of federal law, or (2) that the federal court's refusal to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A federal habeas petitioner can procedurally default a claim by "fail[ing] to raise that claim before the state courts while state-court remedies are still available" or by failing to comply with "a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Lundgren*, 440 F.3d at 763 (quoting *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000)). "When the state procedural rule prevents the state court from hearing the merits of the claim, procedural default occurs when 1) a petitioner failed to comply with the rule, 2) the state actually enforced the rule against the petitioner, and 3) the rule is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Id.* (citing *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003)). *See also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the first case in this circuit to adopt the above three-part test). "Failure to comply with well-established and normally enforced procedural rules usually constitutes 'adequate and independent' state grounds for foreclosing review." *Lundgren*, 440 F.3d at 763 (citing *Willis*, 351 F.3d at 745). *See also Beard v. Kindler*, 130 S. Ct. 612, 617 (2009) (a state procedural rule is adequate to create a procedural bar if

6

it is "'firmly established and regularly followed'" (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002))).

**B. Analysis**

Ohio Rule of Appellate Procedure 26(B) states that a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence within ninety days of the appellate court's decision on direct appeal, "unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B)(1). Petitioner did not raise his first nine grounds for relief on direct appeal; rather, he first raised them in a Rule 26(B) application submitted approximately eight months after the Ohio Supreme Court denied his direct appeal. Petitioner raised his eleventh ground for relief–that he was denied the effective assistance of trial counsel–on direct appeal to the Ohio Court of Appeals, but then he failed to include it in his subsequent appeal to the Ohio Supreme Court.

Petitioner now argues that his first nine grounds for relief, as well as his eleventh ground for relief, are not procedurally defaulted, despite the fact that he did not raise these grounds for relief on direct appeal to the Ohio Supreme Court or in a timely Rule 26(B) application.[1] According to Petitioner, Rule 26(B) cannot provide a basis for procedural default, because it is not an "adequate

---

[1]Despite certification of the issue, Petitioner has failed to raise any arguments on appeal concerning the procedural default of his eleventh ground for relief. As noted above, Petitioner raised his eleventh ground for relief–that he was denied the effective assistance of trial counsel–on direct appeal to the Ohio Court of Appeals, but then he failed to include it in his subsequent appeal to the Ohio Supreme Court. Ohio's post-conviction relief statute, ORC § 2953.21, bars consideration of any issue that could have been fully litigated on direct appeal from a judgment of conviction. *See State v. Perry*, 10 Ohio St. 2d 175, 176 (1967); *State v. Combs*, 100 Ohio App. 3d 90, 98 (1994). Thus, Petitioner "failed to raise that claim before the state courts while state-court remedies [were] still available." *Lundgren*, 440 F.3d at 763. Given that Petitioner has provided no argument as to how he may overcome this procedural default, Petitioner has abandoned the argument that his eleventh claim for relief is not procedurally defaulted.

7

and independent" state ground on which the state can rely to foreclose review of Petitioner's federal claims under prong three of this Court's *Maupin* test. Specifically, "the discretionary nature of 26(B) Rule [sic] relating to untimeliness, plus the fact that no criteria is set to guide the State Court of Appeals [as to the question of what constitutes good cause], results in a rule that is not adequately and firmly established." (Pet.'s Br. at 16).

Petitioner does not dispute that prongs one and two of the *Maupin* test are satisfied. With regard to prong one, Petitioner failed to comply with Rule 26(B) by failing to file his application to reopen his direct appeal within the required ninety day period. With regard to prong two, the state actually enforced the rule against Petitioner when it denied his Rule 26(B) application to reopen his direct appeal on the basis that the application was not filed within the required ninety day period and Petitioner had "fail[ed] to show good cause for the application being filed untimely." (Hab. Pet. at A-1).

With regard to prong three, which provides the basis of Petitioner's dispute, we have held that a petitioner's failure to comply with Rule 26(B) is an "adequate and independent" state ground on which the state can rely to foreclose review of a petitioner's federal claims. In *Fautenberry v. Mitchell*, we held that "the timeliness requirements in [Rule] 26(B) . . . are an actually enforced, adequate and independent state ground upon which the Ohio courts consistently refuse to address ineffective assistance of appellate counsel claims." 515 F.3d 614, 640 (6th Cir. 2008). *See also Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010) ("[w]e have repeatedly concluded that Rule 26(B) was both 'firmly established' and 'regularly followed' as applied in non-capital cases [since] 1998"); *Wickline v. Mitchell*, 319 F.3d 813, 823 (6th Cir. 2003) (finding that the petitioner's ineffective assistance of appellate counsel claims were procedurally defaulted because he failed to

8

comply with Rule 26(B)); *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (finding the petitioner's claim to be procedurally defaulted and rejecting the petitioner's argument that Rule 26(B) is not a firmly established and regularly followed procedural rule). In *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002), we rejected the petitioner's argument that there is no uniformity in the application of the good cause requirement, finding that "[o]ur review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause [under Rule 26(B)] at the time the rule was applied." *See also Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008) (reaffirming the holding in *Monzo* that the timeliness and good cause requirements of Rule 26(B) have been "firmly established and regularly followed" in non-capital cases in Ohio); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007) (same).

Petitioner attempts to sidestep this Court's precedent on Rule 26(B) by arguing that the problem with the rule is not the lack of uniformity of application, but rather the "unbridled discretion that the Ohio Courts of Appeals have in initially determining whether good cause is present." (Pet.'s Rep. Br. at 3). In support of his argument concerning the unbridled discretion in the application of Rule 26(B), Petitioner points to *Dietz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004), where we held that Ohio Rule of Appellate Procedure 5(A) governing delayed appeals "does *not* constitute an 'adequate' ground to bar habeas review . . . [because it] does not specify the criteria the courts should use in determining whether to grant a delayed appeal." Rule 5(A) specifies no criteria for the courts to use in assessing a motion for a delayed appeal, instead simply requiring the defendant to indicate his reasons for failing to perfect a timely appeal. *Id.* at 809 (citing Ohio R. App. P. 5(A)).

However, in contrast to Rule 5(A), we have found that, beginning with the Ohio Supreme Court decision in *State v. Reddick*, Ohio courts have developed criteria for defining what constitutes

9

good cause under Rule 26(B), which limit the Ohio courts' discretion in applying the rule. *See Monzo*, 281 F.3d at 578 (citing *State v. Reddick*, 647 N.E.2d 784, 786 (Ohio 1995) ("[Rule 26(B) was intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief."); *State v. Kaszas*, No. 72546/72547, 2000 WL 1195676, at *1 (Ohio Ct. App. Aug. 14, 2000) (listing decisions defining what constitutes good cause)). Furthermore, in *Beard v. Kindler*, the Supreme Court recently rejected the argument that a discretionary state procedural rule may not serve as an adequate ground to bar federal habeas review.[2] 130 S. Ct. at 618. According to the Court, "a discretionary rule can be 'firmly established' and 'regularly followed'-even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* Thus, contrary to Petitioner's argument, discretion alone does not necessarily make a state procedural rule so inadequate as to bar federal habeas review.[3]

---

[2]In addition to Rule 5(A), Petitioner also points to the underlying procedural rule in *Beard* as providing support for his argument. The Third Circuit held that Pennsylvania's fugitive forfeiture rule did not provide an adequate basis to bar federal habeas review because it was not "consistently or strictly applied." *Kindler v. Horn*, 542 F.3d 70, 78-80 (3d Cir. 2008). However, after Petitioner submitted his briefs in the instant case, the Supreme Court overturned the Third Circuit on the issue of whether a discretionary state procedural rule may serve as an adequate ground to bar federal habeas review. Furthermore, even in the absence of the Supreme Court decision, the Pennsylvania fugitive forfeiture rule is distinguishable from Rule 26(B) in that the Third Circuit did not find there to be a body of Pennsylvania caselaw limiting the discretion of the state courts. Accordingly, the Pennsylvania fugitive forfeiture rule does not help Petitioner's case.

[3]In a supplemental filing and at oral arguments, Petitioner has argued that *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), makes clear that the Supreme Court intended *Beard* to be read narrowly. According to Petitioner, *Beard* applies only if the state courts have limited discretion to interpret a rule, whereas the Ohio courts have unbridled discretion in interpreting the "good cause" requirement of Rule 26(B). However, *Bostick* is inapplicable to the instant case because it involves a mandatory state rule that was being applied arbitrarily–falling outside the holding of *Beard*–

Accordingly, we hold that Petitioner's first nine claims and his eleventh claim for relief are procedurally defaulted.

## III. Cause and Prejudice

### A. Standards

Because Petitioner's claims are procedurally defaulted, this Court may not review them unless Petitioner can show cause and prejudice:[4]

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. *See also Maupin*, 785 F.2d at 138.

The "cause" standard in procedural default cases "requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citation omitted). Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing that a factual or legal basis for a claim was not previously available. *Id.* at 493-94.

Ineffective assistance of counsel may constitute cause for a procedural default only at a stage of the proceedings where a petitioner has a Sixth Amendment right to counsel. *See Smith v. Ohio*

---

whereas Rule 26(B) is a discretionary rule that is not being applied arbitrarily–falling within the holding of *Beard*. Furthermore, as explained above, Ohio courts have developed criteria for defining what constitutes good cause under Rule 26(B), and so the state courts do not have unbridled discretion in applying the rule. Accordingly, *Bostick* does not help Petitioner's case.

[4]Petitioner does not claim that a miscarriage of justice will result from enforcing the procedural default in his case, and this issue has not been certified on appeal. Accordingly, we will not address it here.

11

*Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006). *See also Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Coleman v. Thompson*, 501 U.S. at 752. "[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). It does not extend to discretionary appeals or collateral post-conviction proceedings. *Id.* In *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005), the *en banc* Court held that an application for reopening a direct appeal under Rule 26(B) is a collateral proceeding rather than part of the direct right of appeal. Thus, "there is no federal constitutional right to assistance of counsel at that stage." *Id.* at 352. Since there is no right to the assistance of counsel at the Rule 26(B) stage of the proceedings, we have held that a petitioner's counsel cannot be ineffective for failing to file a Rule 26(B) application on his behalf. *See Scuba*, 527 F.3d at 489 (citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."); *Jackson v. Johnson*, 217 F.3d 360, 364 (5th Cir. 2000) (no constitutional right to counsel for purposes of filing a rehearing motion; counsel on direct appeal has no duty to inform a client of the option to file the same *pro se*)).

In the instant case, Petitioner argues that his appellate counsel's failure to advise him of the ninety day deadline for filing a Rule 26(B) application constitutes cause sufficient to overcome his procedural default. Petitioner argues that, like in *Smith v. Ohio Department of Rehabilitation & Corrections*, 463 F.3d at 433, Petitioner's claim of ineffective assistance of counsel does not relate to his new appellate counsel's performance at the Rule 26(B) stage, but rather to his first appellate counsel's performance on direct appeal. In *Smith*, counsel neglected to inform the petitioner of the decision of the Ohio Court of Appeals on direct appeal, impeding the petitioner's opportunity for a

12

further timely appeal to the Ohio Supreme Court. *Id.* at 432. We held that counsel's failure to inform the petitioner of the Ohio Court of Appeals' decision amounted to cause with respect to his procedural default in the Ohio Supreme Court, despite the fact that the appeal to the Supreme Court was discretionary and no constitutional right to counsel attached, because notification of the Court of Appeals' decision was part of appellate counsel's duties in representing her client during the first appeal of right in the Court of Appeals. *Id.* at 433 ("The court's ultimate decision regarding a particular legal proceeding is *part of that legal proceeding*, and appointed counsel's duties in representing a client during that legal proceeding include the duty of informing her client of the outcome of the proceeding."). Likewise, in the instant case, Petitioner argues that even though he did not have a constitutional right to a Rule 26(B) application or effective assistance of counsel at that stage, his appellate counsel's duty to provide effective assistance during the first appeal of right carried with it the continuing duty to notify Petitioner of the deadline for filing a Rule 26(B) application.

However, unlike in *Smith*, the conduct that Petitioner challenges does not "relate[] to representation at a stage of the proceeding when there is a right to counsel." *Id.* at 433 n.4. It is undisputed that appellate counsel in this case provided Petitioner with timely notice of the decision of the Ohio Court of Appeals. Counsel's alleged failure to inform Petitioner of the time requirements for filing a Rule 26(B) application for reopening the appeal–unlike informing a client of the decision in a proceeding in which counsel represented that client–does not relate to the continuation of the direct appeal. Rather, such conduct relates to an independent, collateral proceeding. Appellate counsel would not even be in the position to advise a defendant concerning the time requirement for filing a Rule 26(B) application to reopen the appeal until after the defendant

13

appealed his judgment of conviction to the Supreme Court, at which point the defendant no longer has the constitutional right to effective assistance of counsel.

Because Petitioner has not shown cause for his procedural default, we need not reach the question of whether Petitioner has shown prejudice resulting from his procedural default. *See Tolliver*, 594 F.3d at 930 n.13.

## CONCLUSION

Because Petitioner's first nine claims and his eleventh claim for relief are procedurally defaulted, and because Petitioner has not shown cause with respect to the default, we hereby **AFFIRM** the district court's order denying the petition for habeas corpus relief.