### The STATE of Ohio, Appellee,

### v.

### SWEENEY, Appellant.

[Cite as *State v. Sweeney* (1999), 131 Ohio App.3d 765.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16181.

Decided Jan. 8, 1999.

766

*Carly J. Ingram,* Montgomery County Assistant Prosecuting Attorney, for appellee.

*Charles Sweeney, pro se.*

*Per Curiam.*

This matter is before the court on the application of Charles Sweeney to reopen his direct appeal. Sweeney's application was not filed within the appropriate time limit. Under App. R. 26, if a defendant does not ask to reopen his appeal within ninety days from journalization of the appellate judgment, he must show good cause for the late filing. Sweeney contends that his failure to comply with the time limit is excused by his status as an inmate with limited access to research materials and by the fact that he obtained access to a complete copy of his trial transcript only a few months before filing the application. In response, the state contends that ignorance of the law and lack of counsel do not excuse a failure to comply with the time limit in App. R. 26.

As additional support for his position that good cause exists, Sweeney has attached a decision from the United States District Court for the Southern District of Ohio, Eastern Division, which found that Ohio's procedure for reopening appeals was not a "firmly established and regularly followed" state practice precluding federal habeas relief. *Carpenter v. Mohr* (Mar. 12, 1997), S.D. Ohio No. C–2–96–447, unreported, affirmed on other grounds and remanded for issuance of a writ of habeas corpus conditioned on the state giving the defendant a new culpability hearing (C.A.6, 1998), 163 F.3d 938. In *Carpenter,* the district court's decision was based on the court's belief that Ohio had inconsistently applied the good-cause standard in App. R. 26. For example, in the district court's review of Ohio cases, good cause was almost never found in some appellate districts, while in others, a standard was used that nearly always

allowed a finding of good cause. (Our own appellate district was not among those cited in the decision.) Additionally, the district court noted that the Ohio Supreme Court had offered little guidance in this area. As a result, the district court found that Ohio did not have an adequate state procedural rule prohibiting subsequent review of federal constitutional claims in federal court. *Id.* at 10.

On appeal, the Sixth Circuit Court of Appeals agreed with the district court about the lack of uniform application of App. R. 26 in Ohio courts, but found that it did not need to reach the issue. Instead, the Sixth Circuit relied on the fact that the district court was required to decide only whether a defendant's claim was exhausted, not whether the claim was procedurally defaulted. See *Carpenter*, 163 F.3d at 945.

Upon review, we find the *Carpenter* decision of limited relevance. Although *Carpenter* does point out some inconsistencies in the application of App. R. 26, the issue before us is whether good cause has been shown under the circumstances of this case. Furthermore, unlike the federal courts, we believe that some guidance does exist under Ohio law for deciding whether good cause exists. Although App. R. 26 and App. R. 14 (which deals with enlargements and extensions of time) do not define "good cause," the Ohio Supreme Court has shed some light on what the appropriate focus should be. Specifically, in *State v. Reddick* (1995), 72 Ohio St.3d 88, 647 N.E.2d 784, the court stressed:

"Neither *Murnahan* nor App.R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals. Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief." *Id.* at 90–91, 647 N.E.2d at 786, discussing *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204.

In addition, guidance exists in terms of how good cause has been addressed in individual cases. For example, in *State v. Williams* (1996), 74 Ohio St.3d 454, 455, 659 N.E.2d 1253, 1254, the Ohio Supreme Court said that good cause is not shown when the delay in filing a motion to reopen is due to the busy schedule of the public defender and the need to do new research before filing the motion. This reflects traditional notions that simple attorney neglect is not a reason for excusing a litigant's failure to comply with time requirements. See, *e.g., State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.*, (1995) 72 Ohio St.3d 464, 466, 650 N.E.2d 1343, 1345. Although a distinction exists between the civil and criminal contexts, this does not automatically mean that criminal defendants should be afforded substantially more solicitous treatment. For example, unlike

civil litigants, criminal defendants who file motions to reopen have already had one chance at appeal. Therefore, *Reddick* and other cases balance competing considerations by somewhat restrictively viewing motions to reopen and by focusing on the particular circumstances involved in each case.

■ As another example, in *State v. Simms* (Aug. 13, 1998), Cuyahoga App. No. 69314, unreported, 1998 WL 518165, failure to obtain a transcript was found not to be good cause for untimely filing. In particular, the court in *Simms* relied on the fact that App. R. 26(B)(2)(e) requires attachment only of those parts of the record that the applicant has available. Therefore, lack of access to various parts of the transcript does not automatically prevent applicants from filing a timely motion. Like the court in *Simms*, we believe that applicants are not precluded from filing simply because they do not have a complete transcript. And, regarding the particular circumstances of the present case, we note that Sweeney has not said what parts of the transcript he lacked, why he lacked access, what efforts he made to obtain the transcript, or how he was hampered in filing by the lack of access. Accordingly, Sweeney has given us no reason to even consider whether good cause exists.

■ Likewise, concerning access to a law library, the court in *State v. Kitchen* (May 22, 1997), Cuyahoga App. No. 69430, unreported, 1997 WL 284822, rejected the argument that untimeliness is excused because of an inmate's limited access to research materials. However, the court did not elaborate on its reasons for this holding. We agree with the court in *Kitchen* that restricted access to research materials does not provide good cause for noncompliance with the time requirements in App. R. 26. Our own holding is based on the logical assumption that all inmates in Ohio prisons would be subject to some restrictions on access to research materials. As a result, Sweeney's status is no different from that of any other inmate. Therefore, if good cause were satisfied by such a circumstance, it would be virtually eliminated as a requirement under App. R. 26. Admittedly, the facts of a particular case could possibly demonstrate good cause, but that is far different from adopting a blanket rule. Again, Sweeney has not given us any specifics about his own actual access, beyond claiming that general restrictions on access exist. As an aside, we also note that the time period involved in *Kitchen* was considerably less than the delay in the present case, *i.e, Kitchen* involved a six-month delay as opposed to Sweeney's delay of more than a year.

Based on the preceding discussion, we find that Sweeney has not established good cause for the untimely filing of his motion to reopen. However, even if Sweeney's motion had been timely, Sweeney has not shown a genuine issue or colorable claim that he was deprived of the effective assistance of counsel. See, *e.g., State v. Allen* (1996), 77 Ohio St.3d 172, 173, 672 N.E.2d 638, 639–640. In

this context, the standard of review for assessing a request to reopen is as follows:

"[A] defendant must demonstrate such serious errors of counsel that a defendant was prejudiced and demonstrate that but for these errors, there was a reasonable probability that the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Therefore, to establish ineffective assistance of counsel, the defendant must show (1) deficient performance of counsel and (2) resulting prejudice to the defendant." *State v. Michael* (1996), 114 Ohio App.3d 523, 528, 683 N.E.2d 435, 438.

Accordingly, we review Sweeney's claims to see if they establish genuine issues concerning whether counsel's performance was deficient and, if so, whether Sweeney was prejudiced as a result.

In support of his motion to reopen, Sweeney claims several errors on the part of trial counsel that appellate counsel failed to raise on direct appeal. These errors include failure to require the prosecution to prove Sweeney guilty of having a weapon under disability, failure to ask the trial court to try the weapon-under-disability charge to the court, failure to call witnesses who could prove that Sweeney testified truthfully about his violent behavior at the hospital on the night of the alleged crime, and failure to object to objectionable remarks by the prosecution. Additionally, appellate counsel is said to have been ineffective in failing to raise prosecutorial misconduct and the trial court's abuse of discretion in overruling defense objections to testimony about Sweeney's intent and state of mind.

As we mentioned in our prior opinion in this case, Sweeney's conviction arose from an alleged burglary in the early morning hours of February 9, 1996, at the home of Eddie Spooner. Although Sweeney was originally charged with aggravated burglary, carrying a concealed weapon, and having a weapon under disability, the jury found Sweeney not guilty of having a firearm about his person while committing the offense of aggravated burglary. Therefore, Sweeney was found guilty only of burglary and was also convicted of having a weapon while under a disability. See *State v. Sweeney* (Oct. 31, 1997), Montgomery App. No. 16181, unreported, 1997 WL 674650.

In our opinion affirming the convictions, we considered the propriety of admitting evidence about Sweeney's conduct after the incident. This conduct included violence at the hospital where Sweeney was taken for treatment, Sweeney's talk at the hospital about killing people, and the forcible restraint of Sweeney at the hospital. After considering the issue, we found that evidence of conduct after the incident was relevant to prove the absence of mistake or accident. The prosecution theory of the case, supported by the prosecution

evidence, was that Sweeney was romantically interested in Eddie Spooner's sister, Nikki, but that Nikki did not feel the same way about him. On the night of the alleged burglary, Sweeney came to the Spooner home late at night, drunk, and told Nikki he was in love with her. He also talked about killing himself. Eventually, he was persuaded to leave, but returned, demanding to be let into the house to speak with Nikki. At that time, Sweeney had a confrontation with Eddie Spooner, which resulted in the window of a door being broken. Eddie testified that Sweeney intended to harm or kill the occupants of the house, while Sweeney claimed he broke the window by accident and had no intent to harm anyone. As a result, evidence of Sweeney's conduct after the incident, including threats, was relevant to show that he did not break the window at the Spooner home by accident.

We also said in our opinion that even if evidence of Sweeney's subsequent conduct was erroneously admitted, the error was harmless because no reasonable possibility existed that the testimony contributed to Sweeney's conviction. Our reason for this conclusion was that the jury did not convict Sweeney of aggravated burglary. Instead, the jury convicted Sweeney only of the lesser charge of burglary, meaning that the jury did not believe, despite Sweeney's conduct at the hospital, that Sweeney intended to harm the occupants of the Spooner home.

■ The evidence that trial counsel allegedly omitted was evidence that would have helped substantiate Sweeney's testimony that his violent conduct at the hospital was caused by a reaction to a painful procedure used to obtain a urine sample. However, because the jury impliedly found that Sweeney did not attempt to harm the occupants of the Spooner home, the jury obviously gave little or no weight to the events that occurred at the hospital. Accordingly, no reasonable probability exists that the trial result would have been different if Sweeney's trial counsel had offered the omitted evidence.

■ Likewise, no reasonable probability exists that the result would have been different if the trial court had sustained defense objections to testimony from one of the victims about Sweeney's state of mind. In this regard, Eddie Spooner testified that he believed, based on Sweeney's statements and conduct, that Sweeney was going to break into the house and kill everybody. Again, as we stressed above, the jury simply did not accept this version of events, but instead believed Sweeney's testimony that he did not intend to harm the occupants of the Spooner home. Therefore, the outcome would not have been different even if appellate counsel had raised the trial court's error in overruling objections to testimony about Sweeney's state of mind.

Next, regarding issues relating to the weapon-under-disability charge, Sweeney claims that trial counsel was ineffective in two ways. First, trial counsel admitted

during opening statement that Sweeney had a weapon while he was under a disability, thereby relieving the state from its burden of proving the charge. Second, trial counsel allegedly erred by failing to ask the trial court to try the weapon-under-disability charge to the court, along with the specifications of a prior offense of violence. According to Sweeney, the reason for requesting that the specifications be tried to the court was to keep Sweeney's prior manslaughter conviction from the jury. However, by allowing the issue to be tried to the jury, trial counsel allowed evidence of this previous, unrelated conviction to be prejudicially placed before the jury.

When Sweeney was indicted, a prior-conviction specification was added to the charges of aggravated burglary and carrying a concealed weapon. This specification arose from Sweeney's prior conviction for involuntary manslaughter. The prior conviction also served as the basis for the weapon-under-disability charge, because Sweeney was forbidden to have weapons as a result of his manslaughter conviction. Before trial, Sweeney's counsel asked the court to remove from the jury's consideration the allegations of the prior manslaughter conviction in all three counts of the indictment. The court granted the request as to the first two counts (aggravated burglary and carrying a concealed weapon). However, the court refused to remove the manslaughter conviction allegation from count three (weapons under disability). In this regard, the court reasoned that the specifications on the weapon-under-disability charge could not effectively be separated when they, in essence, formed the elements of the weapon-under-disability charge. Thus, contrary to Sweeney's claim, his trial counsel did attempt to persuade the trial court to try at least part of the weapons-under-disability charge to the court, but was simply unsuccessful.

The third count of the indictment charged Sweeney with violating R.C. 2923.13(A)(2). This statute, as it existed at the time of Sweeney's crime, provided:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"* * *

"(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony."

In order to prove this charge against Sweeney, the state had to prove, beyond a reasonable doubt, that Sweeney was not relieved from disability as provided in R.C. 2923.14, that he knowingly acquired, had, carried, or used a firearm, and that he was under indictment for or had been convicted of any felony of violence,

or had been adjudged a juvenile delinquent for commission of any such felony. Consequently, proving a prior conviction was an essential element of the crime of having a weapon under disability. See, also, *State v. Smith* (1990), 68 Ohio App.3d 692, 695–696, 589 N.E.2d 454, 456–457. Thus, the trial court correctly found that the prior conviction could not be separated from the weapon-under-disability charge.

Furthermore, neither the state nor the trial court is bound by a defense stipulation as to the existence of a conviction. And a defendant is not entitled to bifurcated proceedings, nor may he waive jury trial on the prior-conviction element alone. *State v. Nievas* (1997), 121 Ohio App.3d 451, 700 N.E.2d 339. *State v. Allen* (1987), 29 Ohio St.3d 53, 29 OBR 436, 506 N.E.2d 199; and *Smith*, 68 Ohio App.3d at 695–696, 589 N.E.2d at 456–457. As a result, Sweeney had no right to a separate trial on the prior-conviction element.

Based on the above authority, the trial court correctly denied Sweeney's request to separate the allegations of a prior involuntary manslaughter conviction from the charge of having a weapon under disability. Faced with the fact that the involuntary manslaughter conviction would be made known to the jury, Sweeney's trial counsel made a tactical choice to admit guilt on the weapon-under-disability charge, with the apparent aim of limiting the negative evidence that might be elicited about the prior conviction. There was little dispute that Sweeney was guilty of the charge, as he was carrying a gun when he was apprehended by the police. Under the circumstances, defense counsel's choice of tactics could have eliminated damaging testimony from the state about the prior conviction, while allowing the defense to offer its own explanation for the conviction. As we have noted previously, trial counsel's choice of tactics must be given deference. *State v. Nobles* (1995), 106 Ohio App.3d 246, 276, 665 N.E.2d 1137, 1156–1157. Accordingly, since the trial court did not err in refusing to try the weapon-under-disability charge separately, and since trial counsel adopted a reasonable means of dealing with an issue that could not be avoided, we find that Sweeney has raised no genuine issue or colorable claim on this point.

Furthermore, the tactic employed by defense counsel was generally successful, as the manslaughter conviction was not mentioned until the defense case, other than by one prosecution witness. According to this witness, Sweeney threatened to kill people in the Spooner home and also mentioned that he had killed his brother. By comparison, during the defense case, a defense witness (Sweeney's cousin) testified that Sweeney had accidentally killed his brother. According to the cousin, Sweeney would not have purposely hurt his brother, because Sweeney loved his brother very much. Sweeney himself explained that he had accidentally killed his brother and had received five years' probation, but no jail time. Sweeney also testified that he was depressed on the night of the alleged burglary

at the Spooner home because of his brother's death and because his father had recently died.

We emphasize again that the jury was apparently not prejudiced by learning of the prior conviction, because the jury did find Sweeney not guilty of aggravated burglary. Compare *Smith*, 68 Ohio App.3d 692, 589 N.E.2d 454 (finding defendant was not prejudiced by evidence as to prior armed robbery conviction, since the jury acquitted defendant on some, but not all charges). Had the jury believed that Sweeney intended to harm the residents of the Spooner home, the jury would have found Sweeney guilty of aggravated burglary. However, the jury did not find Sweeney guilty of this crime, but found Sweeney guilty only of burglary, which does not require an intent to harm or the possession of a deadly weapon. R.C. 2911.12. As we mentioned before, the jury apparently believed Sweeney's testimony about certain matters, but not about others. Thus, under the circumstances, we do not believe any prejudice resulted from trial counsel's strategy.

The final issue raised by Sweeney relates to alleged misconduct of the prosecutor and trial counsel's failure to object to the prosecutor's remarks, including comments that Sweeney was an "egomaniac" and was "obsessed." Accordingly to Sweeney, the prosecutor also made an alleged misstatement about whether Sweeney heard an alarm and fled the scene. As a further matter, Sweeney claims that the prosecutor engaged in unspecified attempts to inflame the jury. Admittedly, trial counsel did not object to prosecution remarks, and appellate counsel did not raise the issue of prosecutorial misconduct during the direct appeal.

In *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300, the Ohio Supreme Court said that "[t]he test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." The court also stressed that the prosecution and the defense have wide latitude in summarizing what the evidence has shown and in discussing the reasonable inferences to be drawn. *Id.*

We have reviewed the excerpts of the trial transcript attached to the motion to reopen and find no impropriety in the prosecutor's remarks. As we mentioned, the prosecution theory was that Sweeney was romantically interested in Eddie Spooner's sister, Nikki, who did not feel the same way about him. On the night of the alleged burglary, Sweeney came to the Spooner home late in the evening, while drunk, and told Nikki he loved her. He also talked about killing himself. At some point, Sweeney was persuaded to leave, but then returned and demanded to speak with Nikki. At that time, Sweeney and Eddie Spooner had a confrontation, which resulted in the window of a door being broken. As we also mentioned earlier, Sweeney testified that the window accidentally broke, while

Eddie said the window broke when Sweeney tried to force his way into the house. Testimony was also presented from prosecution witnesses indicating that Sweeney said he wanted Nikki in his personal world and would kill everyone in the house to get to her. Additionally, more than one prosecution witnesses said that a burglar alarm went off at the time the window was broken. Specifically, Nikki testified about hearing the alarm, and both Eddie and Eddie's cousin, Mike, testified that Mike pressed the panic button on the alarm when Sweeney broke the window. Both Mike and Eddie also said that Sweeney left after hearing the alarm. Other prosecution evidence indicated that Sweeney had weapons with him when he tried to force his way into the house. On the other hand, Sweeney denied that he was obsessed with Nikki. Likewise, Sweeney testified that he did not mean to break the window and did not try to force his way into the house. He also denied making threats to kill anyone.

Based on the evidence presented, the prosecution was entitled to argue that Sweeney was obsessed with Nikki, and was even entitled to argue that Sweeney's actions may have been those of an egomaniac, *i.e.*, one who is extremely "limited in outlook or concern to one's own activities or needs." Merriam Webster's Collegiate Dictionary (10 Ed. 1992) 369. Moreover, the prosecutor did not misconstrue the testimony, as there was evidence that Sweeney heard an alarm and fled. Accordingly, trial counsel would have had no basis to object to the prosecutor's remarks in closing and was not ineffective in failing to do so. Again, based on the matters raised by Sweeney, we find no genuine issues or colorable claims concerning the ineffectiveness of Sweeney's counsel.

In light of the above discussion, we find that Sweeney has failed to show good cause for his untimely motion to reopen. We also find that Sweeney has failed to show genuine issues, or colorable claims, as to the ineffective assistance of his counsel. Consequently, the motion to reopen is denied.

*Motion denied.*

BROGAN, WOLFF and FREDERICK N. YOUNG, JJ., concur.