[Cite as *State v. Ramsey*, 2015-Ohio-4812.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RASHAUN M. RAMSEY | : | Case No. 14CA90 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:              Appeal from the Richland County
                                                            Court of Common Pleas, Case No.
                                                            14CR343

JUDGMENT:                                          Affirmed

DATE OF JUDGMENT:                          November 20, 2015

APPEARANCES:

For Plaintiff-Appellee                           For Defendant-Appellant

BAMBI COUCH PAGE                         WILLIAM T. CRAMER
Prosecuting Attorney                           470 Olde Worthington Road, Suite 200
                                                            Westerville, Ohio 43082
By: Lillian R. Shun
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1} Defendant-appellant Rashaun Ramsey appeals his conviction and sentence from the Richland County Court of Common Pleas on rape, kidnapping, possession of both heroin and cocaine and failure of sexually oriented offender to notify of change of address. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On June 5, 2014, the Richland County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, two counts of kidnapping in violation of R.C. 2905.01(A) (3) and (4), felonies of the first degree, one count of possession of heroin in violation of R.C. 2925.11(A) & (C)(6)(a), a felony of the fifth degree, one count of possession of cocaine in violation of R.C. 2925.11(A) & (C)(4)(a), a felony of the fifth degree, and one count of failure of sexually oriented offender to notify of change of address in violation of R.C. 2950.05(F)(1), a felony of the first degree. The indictment included sexually violent predator specifications with respect to the rape and kidnapping counts, sexual motivation specifications with respect to the kidnapping counts, and forfeiture specifications with respect to the drug possession counts. At his arraignment on June 10, 2014, appellant entered a plea of not guilty.

{¶3} Appellant, on July 21, 2014, filed a motion asking that the sexually violent predator and sexual motivation specifications be tried to the court. Pursuant to a Judgment Entry filed on July 31, 2014, the trial court granted such motion.

{¶4} At the jury trial, Jessica Fields testified that until March 21, 2014, she was living at 201 Rowland Avenue with appellant, Kaitlyn Maher, Michael Ewers and Ashley

Siezel. She testified that she met appellant when she bought heroin from him about a year earlier.  According to Fields, Maher, Siezel, and Ewers also used drugs that they obtained from appellant. She testified that from the time she met appellant until March 21, 2014, she did not buy drugs from anyone else and that no one other than appellant brought drugs into the house. Appellant was in charge of the drugs and, according to Fields, if any of the drugs disappeared, appellant would beat them up.

{¶5}    At trial, Fields, who was asked what a "trap house" was, testified that it was a house where drugs were sold and that 201 Rowland was a trap house.  Fields testified that in 2013, she rented an apartment on Park Avenue West in Mansfield and that the money for the rent came from appellant. She testified that a number of others lived in the apartment also and did whatever appellant wanted them to do in exchange for free drugs. Appellant also provided the money for the house on Rowland Avenue. Fields testified that she gave appellant her money because he would beat her up and she was afraid of him. Trial Transcript at 98. When asked, she stated that she was not free to leave 201 Rowland Avenue other than to go to work. She testified that she was appellant's main girlfriend, but was aware that he was sexually involved with the victim in this case. When she confronted the victim, the victim called appellant and told him. Fields testified that when appellant came home "he made us all line up and he smacked me." Trial Transcript at 99. She testified that appellant had smacked her before in front of people to humiliate her and had pistol-whipped her.

{¶6}    After the house on Rowland Avenue was raided on March 21, 2014, appellant's mother and family took the furnishings and belongings from the house, leaving only Fields' belongings behind. Fields testified that on either March 21, 2014 or

March 22, 2014, appellant called her from the jail. Fields testified that she was sick because she did not have heroin and that appellant told her that her "medicine" was in the Pack 'n Play at 201 Rowland Avenue. She found approximately seven grams of heroin when she looked.

{¶7}   Fields testified that on March 20, 2014, appellant received a phone call from someone about H.S., the victim in this case. The caller told appellant that H.S. was working with METRICH, a drug taskforce. Fields testified that H.S. arrived at 201 Rowland Avenue around 10:00 a.m. or 11:00 a.m.  and that appellant asked her about METRICH. H.S., according to Fields, told appellant that they were asking about someone else. Appellant then asked Fields to go and pick up Stephanie Smith, the person who had called him and accused H.S. Fields was gone 15 or 20 minutes. When she got back, appellant confronted Smith and H.S. After it was determined that H.S. was telling the truth, everyone stayed for a couple of hours using the heroin and crack that appellant had provided.

{¶8}   At trial, Fields testified that appellant used the attic space at 201 Rowland Avenue and that there was cable TV up there. She testified that appellant's friends from Cleveland stayed up there frequently and that appellant would go to Cleveland and get them on a weekly basis. Appellant was then gone a day or two. Fields testified that a number of people did work for appellant to get free drugs.

{¶9}   The next witness to testify was H.S. H.S. testified that Fields introduced her to appellant and that she purchased drugs from appellant daily and did not buy from anyone else. She testified that on March 20, 2014, she was driving when appellant's brother, Robert Ramsey, hit her vehicle with his vehicle. She then went to 201 Rowland

Avenue because "he told me to and I was scared." Trial Transcript at 236. When H.S. arrived, she was questioned by appellant about her alleged involvement with the METRICH drug taskforce. After Mike Ewers voiced concerns that H.S. might be wired, she was searched. The following testimony was adduced when she was asked if she had gone to 201 Rowland Avenue to by drugs:

{¶10} A.    No.

{¶11} Q:   Did you walk in and put $60 on the table and say you needed some drugs?

{¶12} A:    Not initially.  But I did put $60 down, trying to reassure him that nothing's different, nothing's up, like I will use so it doesn't look like I'm going over there to set him up.

{¶13} Q:  Okay.  So - -

{¶14} A:  If I didn't get high, I would look suspicious, like I was working for them.

{¶15} Trial Transcript at 239.

{¶16} H.S. testified that after Fields left with another woman to pick up Stephanie Smith, appellant told her to go upstairs to the attic. H.S. was crying because she was concerned that appellant was going to shoot her due to the rumors that she was working with METRICH. Appellant then told her to stop crying because "you already know what this is." Trial Transcript at 241. H.S. then knew that appellant expected her to have sex with him. When asked, she testified that she had had sex with appellant many times before, but that the sex was not voluntary because "[y]ou can't tell him no." Trial Transcript at 241. She testified that appellant had hurt her before and that she had never told him no.  H.S. testified that she told Fields and other girls that

appellant was forcing himself on her and that, as a result, appellant lined them up and smacked all three of them. When asked if appellant had hit her before, she testified that he had hit her at a gas station and that after that, appellant acted like he could do whatever he wanted.

{¶17} According to H.S., appellant shoved her up the stairs, had her take her pants down and then pulled and ripped her panties off of her. Appellant told her to quit crying. After appellant caught H.S. looking at a knife in her purse, he turned her around, pushed her down and forced his penis inside her. She testified that he laid on top of her from behind and put his penis inside her vagina against her will. Appellant jumped up and ran downstairs when he heard Fields' car return after throwing a rag at H.S. and telling her to clean herself up. After cleaning herself up, she went downstairs where Stephanie Smith told H.S. that she heard that H.S. was talking to METRICH about appellant. According to H.S., appellant was "pretty mad" and she felt that she could not leave because she did not want appellant to think that she was a snitch. Trial Transcript at 249. H.S. did not tell anyone at the house that day that she had been raped by appellant because "[t]he last time I talked about it, I got smacked." Trial Transcript at 251. She testified that she was present on the day that Fields was pistol-whipped by appellant and that she knew appellant to have guns. While appellant did not have a gun with him on the day of the incident, she worried about what he might do.

{¶18} H.S. testified that she eventually told appellant and others at 201 Rowland Avenue that she had to go to New Beginnings that day for treatment. After leaving, she went to the probation department, although she was not scheduled to go there that day, to report the rape. A probation officer accompanied her to the hospital and stayed with

her until her examination. While waiting for an examination, H.S. spoke with various law enforcement personnel. She testified that prior to such time, she had not been working with METRICH, but was tired and scared of the drug lifestyle and was "[t]ired of being hurt." Trial Transcript at 263. According to H.S., appellant made her do things that she did not want to do, such as buying bullets, dropping off drugs and coming over all hours of the night and trying drugs. She testified that she could not refuse appellant. She admitted that she took a gun and a radio to 201 Rowland Avenue to trade for drugs and that she sold a car to appellant who paid partially in heroin. Appellant, to whom H.S. owed money, knocked some money off her debt.

{¶19} H.S., on cross-examination, testified that she did not always buy heroin from appellant, but that he sometimes gave it to her in exchange for doing things. She further testified that appellant made her have sex with him in front of her cousin and then made her cousin have sex with him in front of her. H.S., who was using heroin at the time, did not report this to the police. On redirect, she testified that it would not have done any good to tell anyone at the house on March 20, 2014 that appellant had raped her. She admitted that a probation violation had been filed against her for failing to report to her probation officer. When asked what would have happened to her if she had purchased drugs off of someone other than appellant, H.S. testified that she was unsure because she was not allowed to do so.

{¶20} Luke Mayer, a probation officer, testified that on March 20, 2014, he met with H.S. who came in around 3:30 p.m. He testified that she was very upset and was crying and did not appear to be high. Mayer testified that she immediately told him what had happened and that law enforcement was then contacted. He testified that he had

seen appellant one time before on March 11, 2014 when he was out nearby at 200 Rowland on another matter. On cross-examination, he admitted that it would surprise him that H.S. had testified that she had used $60.00 worth of crack cocaine on March 20, 2014. He also testified that on March 20, 2014, there was a probation violation pending against her for failure to show up for her placement in a facility. On redirect, he testified that he did not see any signs of intoxication from H.S.

{¶21} The next witness to testify was Detective Steve Blust, who is assigned to the METRICH Enforcement Unit. He testified that he had heard about appellant, but did not know his name until April of 2013. Detective Blust received information about 40 times between April of 2013 and March of 2014 that appellant was in and about Richland County at six or seven different addresses, including 201 Rowland Avenue. Detective Blust testified that he went to the hospital on March 20, 2014 with Agent Yingling from the FBI and Detective Dave Scheurer and interviewed H.S. who was "upset, scared, crying." Trial Transcript at 364. Based on the information that they received, a decision was made to execute a search warrant at 201 Rowland Avenue. During the search, a spoon with residue on it and a money roll in a baggy with a rubber band around it was found. The roll contained $4,450.00. The Detective testified that drug dealers often package money in such a manner. A notebook with names and phone numbers was also found as was a wallet belonging to appellant. During the search, syringes, a baggy containing powder, four white pills, bullets and a number of cell phones were also found. Detective Blust testified that prior to the raid, the occupants at 201 Rowland Avenue were tipped off by the landlord.

{¶22} On cross-examination, Detective Blust testified that prior to the night in question, he had seen appellant in Richland County four or five times, but had not seen him at 201 Rowland Avenue. When asked if he found any quantity of drugs inside 201 Rowland Avenue, he testified that a "little bit" was found and that it was enough to test. Trial Transcript at 397. According to him, the amount of cocaine found was enough to get high on. Detective Blust further testified that appellant, during execution of the search warrant, was observed trying to climb out of a bathroom window in his underwear with no shoes on. On redirect, he testified that texts on the phones were directed to appellant.

{¶23} Travis Dean, H.S.'s probation officer, testified that he had contact with her on March 20, 2014 and that she looked terrified and was frantic. H.S., who was not due to report that day to probation, told him that she had been raped. He testified that they drove her to the front door of the ER and dropped her off. When H.S. came in on March 20, 2014, she had a probation violation pending.

{¶24} Photographs of the vehicle that H.S. was driving on March, 20, 2014, which were taken by law enforcement and admitted, showed scraping to the rear passenger side quarter panel. The owner of the vehicle verified that the damage was not there before.

{¶25} At trial, Jennifer Stump, a sexual assault nurse examiner, testified that she performed an examination on H.S. on March 20, 2014. The examination results were consistent with vaginal penetration. Testimony was adduced at trial that the DNA of the sperm recovered matched appellant's profile. In addition, testimony was adduced that

the spoon with residue on it found at the scene tested positive for heroin and the cocaine was located in a baggy.

{¶26} Mike Ewers, appellant's friend, testified that he had been living with appellant and Fields since February of 2014 at 201 Rowland Avenue. He testified that he bought drugs off of appellant and stole items that he traded to appellant for drugs. Appellant also had Ewers deliver drugs for him and answer the door most of the time. According to Ewers, after appellant started questioning H.S. about METRICH, she placed $60.00 on the table and stated that she wanted to get high because she had to report to New Beginnings. When he first saw H.S. coming down from the attic, she was acting "like she was trying to get out of there." Trial Transcript at 754. H.S. then went into a bedroom to get high on crack.

{¶27} When asked whose drugs were in the house, Ewers testified that the drugs were appellant's and that even though he would buy drugs off of a man named Moan at 201 Rowland Avenue, the drugs were appellant's. All of the drugs that came in to 201 Rowland Avenue were controlled by appellant. According to Ewers, anyone who bought drugs off of anyone other than appellant was in trouble. The following is an excerpt from his testimony:

{¶28} Q: Were you present on an occasion where the defendant lined up Jessica, Heather and Angie Garris?

{¶29} A: I was there, but I wasn't in the room at the time in the exact room. I was in my room. His room was beside mine. I was in my room getting high.

{¶30} Q: Could you hear what was going on?

{¶31}  A:   I could hear him, yelling back, talking back and forth and yelling and that.  They was talking about the incident before Shaune even showed up when he was out doing something.  They was talking about an incident about he was cheating on her or cheating on her with Heather and Angie.  And they all got together to talk about it and was going to confront him, you know.  And guess he was mentioning it to them and called them all into the bedroom.

{¶32}  Q:   And when they come out of the bedroom, how are they acting?

{¶33}  A:   Like scared to death.

{¶34}  Trial Transcript at 759-760.

{¶35}  Ewers further testified that there were a lot of girls around getting high and that he assumed that they were appellant's side girlfriends.  When asked if he just made the assumption that it was all sex for drugs, Ewers testified that "I assumed at first that's what was happening, and then at the end it started to get to the point where it was so violent that it was …It was a weird situation." Trial Transcript at 761. He testified that after the raid, appellant's family came from Cleveland and got all of appellant's stuff, which included couches and TVs. Appellant, according to Ewers, had paid the bills at 201 Rowland Avenue.

{¶36}  On cross-examination, Ewers testified that H.S. came often to the address on Rowland Avenue prior to March 20, 2014 to buy drugs. He testified that on March 20, 2014, one of the first things that she did was take out $60.00 and indicate that she wanted to make a purchase. He stated that girls had sex with appellant in exchange for drugs.  When asked if appellant got high, Ewers testified that he did not.

{¶37} After the State rested, appellant called Kayley Granger to the stand. She testified that she was at the Rowland Avenue address at least three times a week and that she saw H.S. there shooting up. She testified that, On March 20, 2014, she saw H.S. drive up herself  and that she went outside to move a van to let H.S. park in the driveway. According to Granger, H.S. "came in saying hi to everyone, happy, and she went straight upstairs." Trial Transcript at 835. She testified that when H.S. left after less than an hour, she seemed happy and normal, hugged her and kissed her on the check. Granger then backed her van out to allow H.S. to leave.

{¶38} At the conclusion of the evidence and the end of deliberations, the jury, on August 6, 2014, found appellant guilty of all counts.  On August 12, 2014, a hearing before the trial court was held with regard to the sexually violent predator specifications attached to the rape and kidnapping counts and the sexual motivation specifications attached to the kidnapping counts. The trial court, as memorialized in Findings of Fact and Conclusions of Law filed on August 20, 2014, found appellant guilty of the sexual motivation specification attached to Count II (kidnapping) and guilty of the sexual predator specifications attached to Count 1 (rape) and Count II (kidnapping). The trial court further found appellant not guilty of the sexual motivation specifications as attached to Count III (kidnapping) and found that the sexually violent predator specification did not apply to such count.

{¶39} As memorialized in a Sentencing Entry filed on August 22, 2014, appellant was sentenced to an aggregate prison sentence of twenty-five (25) years to life. The trial court also ordered appellant to forfeit $4,550.00 to the State of Ohio and classified

appellant a Tier III sex offender. The trial court also imposed a 60 month driver's license suspension and five years of post-release control.

{¶40} Appellant now raises the following assignments of error on appeal:

{¶41} I.    THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS TO FAIR TRIAL UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS, EVID.R. 404(B), AND EVID.R. 403 BY PERMITTING THE PROSECUTION TO PRESENT EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS BY APPELLANT.

{¶42} II.    THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS TO A FAIR TRIAL UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS, EVID.R. 404(B), AND EVID.R. 403 BY PERMITTING THE PROSECUTION TO PRESENT EVIDENCE THAT RAMSEY HAD A PRIOR RAPE CONVICTION.

{¶43} III.   THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD INFER THE FORCE ELEMENT FOR RAPE FROM EVIDENCE THAT THE DEFENDANT OVERCAME THE VICTIM'S WILL BY FEAR OR DURESS.

{¶44} IV.    APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE HIS CONVICTIONS FOR DRUG POSSESSION WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶45} V.    THE CONVICTIONS FOR DRUG POSSESSION WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶46} VI.   APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS BY THE CUMULATIVE EFFECT OF THE NUMEROUS EFFECTS IN THIS CASE.

I

{¶47} Appellant, in his first assignment of error, argues that the trial court violated his right to a fair trial by permitting appellee to present evidence of other crimes, wrongs, or acts by appellant.

{¶48} The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman,* 5th Dist. Stark No.1999CA00027, 2000 WL 222190.

{¶49} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 403(A) provides as follows: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶50} In the case sub judice, appellant specifically argues that there was extensive testimony from H.S., Fields and Ewers that appellant assaulted people who did not do what they were told and that that numerous law enforcement officers made reference to appellant's criminal exploits. According to appellant, appellee presented evidence that appellant "was a major drug trafficker who utilized violence and threats to enforce his authority."

{¶51} As an initial matter, we note that appellant, in his brief, does not state with any specificity or reference to the transcript which testimony is being challenged.

{¶52} During opening statements, appellant's counsel stated that the evidence "may, indeed, show that she [H.S.] bought …drugs" from appellant, that the evidence may show that he was a "big drug dealer from Cleveland" and that 201 Rowland Avenue was a trap house. Trial Transcript at 83-84. During opening statements, appellant's counsel admitted that appellant had sex with H.S., but stated that the case was "about sex for drugs." Trial Transcript at 84. As noted by appellee, appellant did not "paint himself" as a reputable person. We find that appellant "opened the door" to testimony about his character as a drug dealer.

{¶53} Moreover, we note that while appellant argues that the trial court erred in allowing H.S., Fields and Ewers to testify that appellant assaulted people who did not do

as they were told, appellant, with one exception[1], did not object to such testimony. Our standard of review in this case is therefore plain error. Criminal Rule 52(B) provides that "plain errors or defects effecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph 3 of the syllabus. Based on the overwhelming evidence of guilt as set forth in the statement of facts, we cannot say that the outcome of the trial would have been different had the trial court not allowed such testimony.

{¶54} Appellant also argues that "numerous law enforcement officers made reference to [appellant's] criminal exploits." During Detective Blust's testimony, he was asked how many "tips" he received in relation to appellant between April of 2013 and March 21, 2014. Trial Transcript at 361. Appellant's counsel then objected and the following discussion took place:

{¶55} THE COURT:    If it's not related to the drug activity but related to being in town, I am okay with it, but I don't want a trafficking –

{¶56} MS. COUCH-PAGE:    He said "tips."

{¶57} MR. BROWN:    We have trafficking and –

{¶58} MS. COUCH-PAGE:    He asked how many "tips."

---

[1] Appellant's objection when appellee questioned H.S. about specifically what happened to her on an occasion when appellant thought that she had taken some of his drugs was sustained.

{¶59} THE COURT: Can you phrase it this way? If you get information and he was in town between … Well, they can ask questions that are relevant to him being here, because that's an issue regarding whether or not he was residing here or not. So I think they can talk about was he here in Richland County. But I don't want them going into what the tips were about.

{¶60} MS. COUCH-PAGE: Right. We weren't going to.

{¶61} MR. BROWN: I think that's still hearsay. Note my objection.

{¶62} THE COURT: Okay.

{¶63} Trial Transcript at 361-362.

{¶64} Appellee then rephrased the question to ask whether or not Detective Blust had received information that appellant was in and about Richland County often and how many times. After Detective Blust indicated over 40, appellant's counsel objected again on the basis of hearsay and the objection was overruled. Because the issue of appellant's residency in Richland County was at issue with respect to the charge of failure to register with the Richland County Sheriff, we find that the trial court did not abuse its decision in allowing in such testimony. The trial court's decision was not arbitrary, unconscionable or unreasonable. We further note that when Detective Blust subsequently referred, in a response to a question, to appellant "and his crew", counsel objected to the phrase "his crew" and the response was rephrased. Trial Transcript at 366. Similarly, after appellant objected to a question to Detective Blust as to whether H.S. was trying to "take down" appellant, the question was rephrased and no further objections were made. Trial Transcript at 372.

{¶65}  Based on the foregoing, we find that appellant's due process rights were not violated.

{¶66}  Appellant's first assignment of error is, therefore, overruled.

II

{¶67}  Appellant, in his second assignment of error, argues that the trial court violated his right to due process by permitting appellee to present evidence that appellant had a prior rape conviction. Appellant had wanted to stipulate to the same.

{¶68}  On July 28, 2014, appellant filed a Motion to Suppress/In Limine asking the trial court for an order preventing appellee from introducing any evidence about appellant's prior conviction for rape in 1998.  Appellee filed a response to such motion on July 29, 2014, arguing that the use of the prior rape conviction was necessary in order to prove the elements contained in Count VI[2] of the indictment, which was failure of a sexually oriented offender to notify of change of address, a felony of the first degree. At a hearing held on July 29, 2014, appellee argued that the prior conviction was an element of the crime and the trial court noted that "it has to be in the verdict form, because if it's not in the verdict form, then the conviction has to be the lowest level offense….there has to be some sort of additional finding by the jury to say this is a first –degree felony because he was to register based on a first-degree felony." Trial Transcript at 38. As memorialized in a Judgment Entry filed on August 4, 2014, the trial

[2] The indictment alleged with respect to Count Vi as follows:  Count VI:  Rashaune M. Ramsey (aka) Rashaun M. Ramsey, DOB: 01/04/1980, …, on or about the 21st day of March, 2014, at the County of Richland, Ohio, being a person who is required to notify the Richland County Sheriff of a change of address, pursuant to O.R.C. 2950.05(A), did fail to notify the Richland County Sheriff in accordance with that division of a change of address, or a change in vehicle information or identifiers pursuant to division 2950.05(D) of the O.R.C. , the most serious sexually offense or child-victim oriented offense that was the basis of the registration, notice of intent to reside, change of address notification, or address verification requirement that was violated under the prohibition is a felony of the first degree, in violation of section 2950.05(F)(1) of the Ohio Revised Code, a felony of the first degree.

court stated that it was overruling appellant's motion because "the use of defendant's prior rape conviction is necessary in order to prove the elements contained in Count VI of the indictment…"

{¶69} As an essential element of a crime that must be found by a jury, "a defendant is not entitled to bifurcate proceedings, nor may he waive jury trial on a prior conviction element alone." *State v. Nadock,* 11th Dist. Lake No. 2009–L–042, 2010-Ohio-1161, 2010 WL 1058356, ¶ 38, citing *State v. Sweeney,* 131 Ohio App.3d 765, 773, 723 N.E.2d 655 (2d Dist.1999). Neither the state nor the trial court is required to accept a defendant's stipulation to a prior conviction where the prior conviction is an element of the offense. *State v. Smith*, 68 Ohio App.3d 692, 695, 589 N.E.2d 454. (9th Dist. 1990)

{¶70} Appellant, in support of his argument, cites *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1975). In such case, the defendant was charged with violating a federal statute that prohibited possession of a firearm by anyone with a prior felony conviction. The defendant offered to stipulate that he had a prior felony conviction, and moved to have the prosecution prohibited under Fed.R.Evid. 403 from revealing to the jury the nature and name of that prior felony conviction on the ground that the danger of unfair prejudice outweighed its probative force. The trial court rejected the defendant's offer to stipulate to his prior felony conviction and allowed the prosecution to introduce into evidence a judgment entry disclosing the name and nature of the defendant's prior felony conviction, i.e., assault causing bodily injury.

{¶71} After the Ninth Circuit Court of Appeals upheld the trial court's decision, the United States Supreme Court reversed, holding that the trial court had abused its

discretion by refusing to accept the defendant's proposed stipulation and admitting into evidence a judgment entry disclosing the name and nature of the defendant's prior felony conviction. The court found that in light of the proposed stipulation, the minimal probative value of the judgment entry revealing the name and nature of the defendant's prior felony conviction was substantially outweighed by the danger of unfair prejudice, and therefore the trial court erred by admitting the judgment entry.

{¶72} We find *Old Chief* to be distinguishable from the facts in this case. In the case sub judice, appellee was required to introduce evidence of appellant's prior rape conviction in order to elevate the offense of failure to notify to a first degree felony. If the trial court had accepted appellant's stipulation, the jury would not have heard about appellant's prior conviction and could not have found appellant guilty of the charged offense. Moreover, the trial court gave a limiting instruction to the jury regarding how this evidence was to be considered. The trial court instructed the jury that the rape conviction "should only be considered for this count, this failure to provide notice of his change of address. It should not be considered in any way for the other counts. You consider all of the other evidence except that fact that he has a prior conviction for rape…" Trial Transcript at 883-884.

{¶73} Based on the foregoing, we find that the trial court did not err when it permitted appellee to introduce evidence of appellant's prior conviction for rape.

{¶74} Appellant's second assignment of error is, therefore, overruled.

III

{¶75} Appellant, in his third assignment of error, argues that the trial court erred in instructing the jury that it could infer the force element for rape from evidence that appellant overcame the victim's will by fear or duress.

{¶76} Appellant, in the case sub judice, was convicted of rape in violation of R.C. 2907.02(A)(2) which states as follows: " No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The trial court instructed the jury that "[i]f the state proves beyond a reasonable doubt that the defendant overcame the victim's will by fear or duress, you may infer from those facts the elements of force". Trial Transcript at 870.

{¶77} Appellant did not object to the jury instruction. Pursuant to Crim. R. 30(A), "a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." A failure to object to jury instructions constitutes a waiver of that issue, unless but for the error the outcome of the trial clearly would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983). Under the plain error standard, first there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain, i.e. an obvious defect in the trial proceedings. Third the error must have affected "substantial rights" i.e. the outcome of the trial. *State v. Johnson,* Franklin App. No. 06AP-878, 2007-Ohio-2792.

{¶78}  The Ohio Supreme Court has advised that Crim. R. 52(B) plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long,* supra, paragraph three of the syllabus.

{¶79}  Appellant maintains that the fear or duress language was taken from *State v. Eskridge* 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), a case in which a father appealed after being convicted of raping his four year-old daughter. The court, in *Eskridge*, stated, in relevant part, as follows: "We also recognize the coercion inherent in parental authority when a father sexually abuses his child. " * * * Force need not be overt and physically brutal, but can be subtle and psychological.   As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." Id at 58-59 (citations omitted). According to appellant, the Ohio Supreme Court, in *State v. Schaim*, 65 Ohio St.3d 51, 1992-Ohio-31, 600 N.E.2d 661, "limited *Eskridge* to the context of a child victim."

{¶80}  In *State v. Rupp,* 7th Dist, Mahoning No. 05 MA 166, 2007-Ohio-1561, the defendant challenged a jury instruction that invoked the "fear or duress" language in a rape case where the twenty-three-year-old victim stated that she had submitted to her rapist out of fear of retaliation if she resisted. The court stated, in *Rupp*,  as follows:

The Court [in *Schaim*]  essentially held three things:

(1) the almost automatic finding of force or threat of force for children who are raped by those in a position of authority over them does not apply to adults; (2) yet, *even in the case of an adult victim, a threat of force can be inferred from the circumstances if the defendant somehow purposefully*

*caused the victim to believe he would use force against her;* (3) but, mere past incest does not establish a threat of force where the victim does not testify that she was in fear of physical force. Thus, the *Schaim* case cited by appellant is contrary to his current position.

Appellant's argument fails to distinguish between the finding of force or threat of force for cases of children raped by those in authority positions [*Eskridge*] ... and the mere ability of a jury to infer a threat of force in all cases where the victim's will is overcome by fear or duress ... if the defendant created the belief that physical force will be used in the absence of submission, then threat of force can be inferred. Nothing in the rape statute requires the threat of force to be direct or express. Thus, threat of force includes both explicit and implicit threats.

{¶81} *Id.* at paragraphs 31- 32. The court , in *Rupp*, further stated as follows:

Moreover, other appellate cases have unhesitatingly applied the law set forth in the disputed jury instruction here [the *Eskridge* force language] to cases where there was no position of authority over a child. See, e.g., *State v. Pordash,* 9th Dist. No. 04CA8480, 2004-Ohio-6081 [2004 WL 2600461] (dealing with chiropractor raping patients); *State v.*

*Worrell,* 10th Dist. No. 04AP-410, 2005-Ohio-1521 [2005 WL 736529] (dealing with husband raping wife).

{¶82} *Id.* at paragraph 36.

{¶83} Moreover, as noted by the court *Pordash v. Hudson,* 388 F. Appx 466, 468 (6th Cir.2010), "there is no indication that the *Eskridge* language-'as long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established' *Eskridge,* 526 N.E.2d at 306-is intended to be a distinct force standard that applies only to children."

{¶84} Based on the foregoing, we find that the trial court did not commit plain error in instructing the jury as it did.

{¶85} Appellant's third assignment of error is, therefore, overruled.

IV, V

{¶86} Appellant, in his fourth assignment of error, contends that his convictions for drug possession were against the sufficiency of the evidence. In his fifth assignment of error, he argues that his convictions for drug possession were against the manifest weight of the evidence.

{¶87} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.* The weighing of the evidence and judging of the credibility of the witnesses is best left to the trier of fact.

{¶88} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶89} Appellant specifically argues that he was not in possession of the drugs found at 201 Rowland Avenue. R.C. 2925.01(K) defines possession as follows: " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

{¶90} Possession may be actual or constructive. *State v. Butler,* 42 Ohio St.3d 174, 176, 538 N.E.2d 98(1989); *State v. Haynes,* 25 Ohio St.2d 264, 267 N.E.2d 787(1971); *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362(1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery,* 46 Ohio St.2d

316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly,* 137 Ohio App.3d 134, 738 N.E.2d 93(8th Dist.2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler,* supra; *State v.. Barr,* 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247–248(8th Dist.1993); *State v. Morales,* 5th Dist. Licking No.2004 CA 68, 2005–Ohio–4714, ¶ 50; *State v. Moses,* 5th Dist. Stark No.2003CA00384, 2004–Ohio–4943,¶ 9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith,* 9th Dist. Summit No. 20885, 2002–Ohio–3034, ¶ 13, *citing State v. Mann,* 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist.1993). Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item of contraband simultaneously. *State v. Pitts,* 4th Dist. Scioto No. 99 CA 2675, 2000–Ohio–1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson,* 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365(1982), certiorari denied, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130(1982).

{¶91}  As is stated above, there was testimony at trial that appellant, who was a drug dealer with no job, provided drugs to Michael Ewers, Jessica Fields and others. Fields testified that no one else was allowed to bring drugs into 201 Rowland Avenue and that appellant was in charge of the drugs at that address. She further testified that appellant provided the heroin and crack that were being used on the date of the incident. H.S. testified that she was not permitted to buy drugs from anyone except appellant  and that she had obtained drugs from appellant "[f]or as long as I knew him."

Trial Transcript at 328. In addition, Mike Ewers testified that he was friends with appellant and bought drugs off of him or stole things for appellant that he traded for drugs. Ewers also delivered drugs for appellant.     All of the drugs at 201 Rowland Avenue, according to him, were controlled by appellant who had others sell drugs for him.

{¶92} Based on the foregoing, we find that there was sufficient evidence that appellant constructively possessed the drugs found at 201 Rowland Avenue. We further find that the jury did not lose its way in convicting appellant of the two drug possession counts.

{¶93} Appellant's fourth and fifth assignments of error are, therefore, overruled.

VI

{¶94} Appellant, in his sixth assignment of error, argues that he was prejudiced by cumulative error, as set forth in his preceding assignments of error.

{¶95} Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. *State v. Garner* 74 Ohio St.3d 49, 64,1995–Ohio-168, 656 N.E.2d 623. *Accord, State v. Brown,* 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506.

{¶96} In the case sub judice, we have not found multiple instances of error, harmless or otherwise. The doctrine of cumulative error therefore does not apply.

{¶97} Appellant's sixth assignment of error is, therefore, overruled.

{¶98}  Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.